2003 UT App 114

**STATE of Utah, Plaintiff and Appellee,**

v.

**Angel Julio TORRES, Defendant and Appellant.**

**No. 20020458–CA.**

Court of Appeals of Utah.

April 17, 2003.

Linda M. Jones and Ralph Dellapiana, Salt Lake Legal Defender Ass'n, Salt Lake City, for Appellant.

Mark L. Shurtleff, atty. gen., and Kris C. Leonard, asst. atty. gen., Salt Lake City, for Appellee.

Before Judges BENCH, DAVIS, and THORNE, Jr.

## OPINION

BENCH, Judge.

¶ 1 Defendant appeals his conviction of two counts of unlawful possession of a controlled substance within a correctional facility, both second degree felonies under Utah Code Ann. §§ 58–37–8(2)(a)(i) and (2)(c) (Supp. 2001).

### BACKGROUND [1]

¶ 2 On September 21, 2001, Officers Anderson and Romero conducted a "shake-

---

1. "We … consider the evidence presented in this case in a light most favorable to the jury's

down" of Defendant's housing unit at the Salt Lake County jail.[2] When the shakedown was announced, Defendant ran to his cell, jumped on his bunk, and began "pull[ing] his bedding apart." At trial, Officer Anderson testified that Defendant's behavior was unusual as most inmates "slowly walk back" to their cells when officers announce a shakedown.

¶ 3 Anderson and Romero "noticed a bag containing a white powdery substance on the bottom bunk, and a hard brown substance in a 'cellophane' wrap on the concrete floor under the bunks" in Defendant's cell. Anderson conducted field tests and weighed both substances. The white substance tested positive for cocaine and weighed 10.4 grams. The brown substance tested positive for amphetamine and weighed 23 grams. Following testing, Anderson submitted the items to "evidence." According to the State's evidence receipt presented at trial, Charles Hinnen later delivered the items from evidence to Larry Marx, who then gave them to Jennifer McNair, a criminologist and forensic chemist with the Utah State Crime Lab.

¶ 4 McNair tested both substances at the State Crime Laboratory on January 2, 2002. She ran a series of tests and determined that the white powder was cocaine, weighing 1.3 grams, and that the brown substance was heroin, weighing 14.1 grams.

¶ 5 At trial, Officer Anderson testified that the two substances were in the same condition as when he submitted them to evidence. The brown hard substance was in a "taped and sealed" bag that had his "initials on the side." The white substance was also in a sealed bag with his initials on the outside. Anderson also testified about the results of the field tests that he conducted.

¶ 6 McNair testified that it was "[v]ery typical" for substances to weigh less on her scales than when initially weighed by the officers in the field. She also testified that

there is a "difference between field testing" and those tests done in the lab as to reliability.[3] Defendant objected to the evidence of the lab results on foundational grounds "for the reason that the testimony we have about what was seized at the scene" and what was tested at the crime lab were different as to test results and weight. Defendant's objection was overruled by the trial court. Following trial, the jury deliberated and found Defendant guilty of two counts of unlawful possession of a controlled substance within a correctional facility. This appeal followed.

## ISSUES AND STANDARD OF REVIEW

¶ 7 Defendant first argues that the trial court erred in admitting evidence of lab results "where the state failed to make a proper foundational showing for such evidence." A trial court's determination that there was a proper foundation for the admission of evidence "will not be overturned unless there is a showing of an abuse of discretion." *State v. Wynia*, 754 P.2d 667, 671 (Utah Ct.App.1988); *see also State v. Madsen*, 28 Utah 2d 108, 110–11, 498 P.2d 670, 672 (1972). Second, Defendant argues that the trial court erred "in allowing the charge for possession of heroin to go to the jury." We reverse the jury's verdict in a criminal case when we conclude as a matter of law that the evidence is insufficient to warrant the conviction. *See State v. Harman*, 767 P.2d 567, 568 (Utah Ct.App.1989).

## ANALYSIS

¶ 8 " 'Before a physical object or substance connected with the commission of a crime is admissible in evidence there must be a showing that the proposed exhibit is in substantially the same condition as at the time of [the] crime.' " *State v. Eagle Book, Inc.*, 583 P.2d 73, 74 (Utah 1978) (quoting *State v. Madsen*, 28 Utah 2d 108, 498 P.2d 670 (1972)); *see also State v. Ricci*, 655 P.2d 690, 692 (Utah 1982) (concluding that "the

---

verdict." *State v. Harman*, 767 P.2d 567, 569 (Utah Ct.App.1989).

**2.** The State describes a shakedown as "essentially an announced search of the inmates' cells for contraband, during which the inmates must return to their cells without prior notice and sub-

mit themselves and their possessions to search by pre-assigned pairs of officers."

**3.** McNair also stated that heroin and amphetamine are not close enough in chemical properties to be confused with one another in a lab test.

likelihood that the evidence was tampered with [was] remote" and therefore the evidence was admissible). " 'If after consideration of [the circumstances surrounding preservation, custody, and the likelihood of tampering with the substance] the trial court is satisfied that the article or substance has not been changed or altered, [the trial court] may permit its introduction into evidence.' " *Eagle Book*, 583 P.2d at 74–75 (quoting *Madsen*, 28 Utah 2d at 110, 498 P.2d at 672). The admission of such evidence is based on a "two-tiered analysis." *Id.* at 75. The trial court must first determine "in its discretion, ... whether or not the exhibit has been changed or altered." *Id.* (footnote omitted). Then, if the trial court admits the evidence, it is up to "the jury to weigh the evidence based on its assessment of the showing of chain of custody." *Id.* "Defendants' challenge in this case is therefore that the trial court abused its discretion in admitting the" evidence of the lab results. *Id.*

■ ¶ 9 Both Anderson and McNair testified as to the condition of the substances admitted into evidence. Anderson testified that both substances tested were in "taped and sealed" bags with his initials on them. McNair testified that the substances tested were in the "same condition they were in when [they were] received" to be tested. She also identified the evidence receipt, submitted into evidence by the State, and testified that a difference in the weight of substances between field tests and laboratory tests was "[v]ery typical." After consideration of this information, the trial court overruled Defendant's objection and admitted the items into evidence. While this may have been a much easier case if the State had presented more details about the chain of custody of the evidence, we cannot say that the trial court acted outside its permitted range of discretion in admitting the evidence. *See Eagle Book*, 583 P.2d at 75 (concluding that "[t]he judge did not abuse his discretion in admitting the exhibits into evidence based on the testimony presented at trial"); *see also Madsen*, 28 Utah 2d at 111, 498 P.2d at 672.

■ ¶ 10 Any weak link in the chain of custody in the State's case goes to the weight of the evidence "once the trial court has exercised [its] discretion [and] conclude[d] that ... the proffered evidence has not been changed in any important respect." *State v. Bradshaw*, 680 P.2d 1036, 1039 (Utah 1984). After the trial court admits the evidence, "[i]t is within the exclusive province of the jury to judge the ... weight of the evidence." *State v. Howell*, 649 P.2d 91, 97 (Utah 1982); *see also Madsen*, 28 Utah 2d 108 at 110, 498 P.2d at 672 ("While it is the duty of the court to make the first determination [as to whether or not the evidence is admissible] the jury may disregard the evidence should they determine the custody of the article or substance has not been sufficiently shown, or that it has been altered or changed.").

■ ¶ 11 Based on the evidence before the jury in this case, we cannot conclude as a matter of law that the evidence was insufficient to warrant the convictions. *See Harman*, 767 P.2d at 568 ("[T]he standard for reversal is high" and we will reverse only if the evidence is so " 'inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime.' " (quoting *State v. Petree*, 659 P.2d 443, 444 (Utah 1983))). Therefore, we affirm Defendant's convictions.

### CONCLUSION

¶ 12 We conclude that the trial court did not abuse its discretion in admitting the evidence of lab results. Furthermore, we conclude that the evidence was sufficient to warrant Defendant's convictions. We therefore affirm.

¶ 13 I CONCUR: WILLIAM A. THORNE Jr., Judge.

DAVIS, Judge (concurring and dissenting).

¶ 14 For reasons that are obvious from the majority opinion, I dissent therefrom with respect to the admission of the heroin. I concur with the majority opinion with respect to the admission of the cocaine.