IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | MEMORANDUM DECISION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20100474-CA |
| | ) | |
| v. | ) | |
| | ) | F I L E D |
| Brian Avery Smith, | ) | (December 28, 2012) |
| | ) | |
| Defendant and Appellant. | ) | 2012 UT App 370 |

-----

Third District, Salt Lake Department, 071904250
The Honorable Michele M. Christiansen

Attorneys:    Jacqueline R. Hopkinson and Brenda M. Viera, Salt Lake City, for
              Appellant
              Mark L. Shurtleff and Christopher D. Ballard, Salt Lake City, for
              Appellee

-----

Before Judges Orme, Davis, and Thorne.

ORME, Judge:

¶1      Defendant Brian Avery Smith appeals his convictions for possession of a
controlled substance, a third-degree felony, *see* Utah Code Ann. § 58-37-8(2)(a)(i) (2012),[1]
and possession of drug paraphernalia, a class B misdemeanor, *see id.* § 58-37a-5(1).  He

---

1.  Because the current provisions do not materially differ from the provisions in effect
at the relevant time, we cite the current version of the Utah Code for the convenience of
the reader.

argues that the trial court erred by refusing to consider his motion to suppress evidence and by admitting evidence of a broken crack pipe, a twist of cocaine, and a related lab report without an adequate chain of custody. We affirm.

## I. The Motion To Suppress

¶2     Defendant argues that the trial court erred when it refused to consider his motion to suppress evidence on the ground that the motion was untimely under rule 12(c)(1)(B) of the Utah Rules of Criminal Procedure. The interpretation of a rule of procedure is a question of law that we review for correctness. *See State v. Sosa*, 2011 UT 12, ¶ 3, 248 P.3d 482. We interpret statutes and rules according to their plain meaning and "need not look beyond the plain language unless we find some ambiguity." *State v. MacGuire*, 2004 UT 4, ¶ 15, 84 P.3d 1171.

¶3     At a pretrial conference held on November 6, 2009, Defendant's counsel asked the trial court to continue the trial and informed the court that she would be filing a motion to suppress.[2] The State objected to the filing of the motion on the ground that it would be untimely pursuant to rule 12(c)(1)(B) of the Utah Rules of Criminal Procedure because it needed to have been filed five days prior to May 20, 2008, the first scheduled trial date. The court granted the continuance and set the trial for December 23–24, 2009, but agreed with the State that the motion to suppress would be untimely. On November 20, the State filed a motion to continue the trial, which was granted. Defendant's counsel then filed a motion to suppress on January 8, 2010. At a scheduling conference held a week later, Defendant's counsel requested a hearing on the motion. The State again argued that the time for filing the motion to suppress had expired prior to the first scheduled trial date. The court agreed with the State that the motion was untimely and declined to schedule an evidentiary hearing on the motion. The trial was held in March 2010.

---

2. Before this date, the trial had been rescheduled twice—the first time because a new prosecutor and new defense counsel had been assigned to the case and the second time at the request of defense counsel.

¶4     Rule 12(c) of the Utah Rules of Criminal Procedure requires a defendant to file a motion to suppress "at least five days prior to the trial."[3] Utah R. Crim. P. 12(c)(1)(B). Defendant states—and the emphasis is his—that if the rule meant that any motion must be filed five days "prior to the *initial* trial date that was set, regardless of any trial date changes, it would indicate as much." He argues that, based on that plain language of the rule, the word "trial" is unambiguous because the reference to a "trial" in the rule "necessarily requires an actual trial to take place." Thus, Defendant contends that the motion to suppress was timely filed in accordance with the rule because it was filed well before the trial in this case.

¶5     We agree with Defendant that the rule's use of the word "trial" refers to the *actual* trial—not merely the date for which trial was first scheduled.[4] Thus, we conclude that the trial court erred by determining that the motion was untimely.[5]

¶6     The State argues that any error in the trial court's refusal to consider the motion to suppress was harmless. "We will reverse an erroneous evidentiary ruling only if, absent the error, there is a reasonable likelihood that there would have been a more

3. In the absence of a court-imposed deadline, rule 12(c) of the Utah Rules of Criminal Procedure provides the default deadline for filing a motion to suppress. *See* Utah R. Crim. P. 12(c)(1)(B). The parties agree that the default rule applies here.

4. Our construction of the rule means that in the absence of a court-imposed deadline for pretrial motions, rescheduling a trial will give rise to a new default deadline, thus extending the time for a defendant to file pretrial motions under rule 12 of the Utah Rules of Criminal Procedure. Counsel and the trial court should bear this in mind as they contemplate and consider motions to continue trial. In any event, the trial court can eliminate the uncertainties that may arise as a result of rescheduling a trial by imposing self-standing deadlines for pretrial motions.

5. Defendant also argues that the trial court "waived the late filing by agreeing to review Defendant's motion," when it stated at a January 15, 2010 scheduling meeting that it was willing "to review the motion to suppress that was filed by [defense counsel], and review that and give you my legal opinion on whether or not the facts as set forth by [defense counsel] are—would even rise to the level of being a valid suppression motion." There is no record that the court ever reviewed the motion.

favorable result for the defendant." *State v. Kohl*, 2000 UT 35, ¶ 17, 999 P.2d 7 (citation and internal quotation marks omitted).

¶7    The procedural posture of this case is analogous to that of *State v. Ramirez*, 817 P.2d 774 (Utah 1991), in which a defendant filed a motion to suppress evidence on the basis that, among other things, the stop and seizure were unlawful because the officer in that case did not have an objective, articulable suspicion that the defendant had committed a crime. *See id*. at 777, 785. The trial court took this particular basis for the motion to suppress under advisement but never explicitly ruled on it. *See id*. at 777. The Utah Supreme Court stated that this effectively "was the same as a denial of the motion, but a denial without the active participation of the court." *Id.* at 787. The Court noted that,

> in cases in which factual issues are presented to and must be resolved by the trial court but no findings of fact appear in the record, we assume that the trier of facts found them in accord with its decision, and we affirm the decision if from the evidence it would be reasonable to find facts to support it.

*Id.* (citation and internal quotation marks omitted). *See also State v. Lovegren*, 798 P.2d 767, 771 & n.10 (Utah Ct. App. 1990) (accepting the undisputed trial evidence even in the absence of factual findings when considering an appeal of the trial court's decision on a motion to suppress).

¶8    Here, as in *Ramirez*, the trial court did not consider the merits of the motion to suppress—or at least left no record of doing so. As a result, we can evaluate the merits of the motion only if the facts adduced at trial are undisputed. *See Ramirez*, 817 P.2d at 788 n.6. We look to the motion to suppress to determine the scope of the argument and, consequently, what trial evidence we should consider.

¶9    The motion to suppress argues only that the basis for the stop was "purely speculative" and that the police officers had no reasonable, articulable suspicion to stop and question Defendant. Specifically, the motion contends that the State failed to establish the reliability of the police officers' observations made via the surveillance camera because the police report did not mention the camera's resolution, how far away

from the camera the purported drug exchange occurred, or the ability of the officers to observe the exchange while monitoring the surveillance video.[6] On appeal, Defendant has not raised any issue related to the reliability of the officers' observations, presumably because the trial testimony disposed of those concerns.[7] Instead, Defendant now contends that we have no basis for considering the merits of the motion because Defendant was "denied the opportunity to develop the record and no decision was entered on the merits."

---

6. The motion to suppress states, in pertinent part, as follows:

> [Defendant] was observed from a camera located in the homeless shelter. No mention is made [in the police report] as [to] the resolution of the camera or how far away from the camera [Defendant] and the men were standing. . . . [N]o details are given as to [the] ability of the officer to actually observe this moment, how the officer was able to determine that the object [Defendant passed to Mr. Medina] was cash and if there were any objects impeding his view. . . . [Officer Flores] does not describe the item [that Mr. Cruz placed into Defendant's hand] or how he is able to determine that the item is contraband of any sort. Yet based upon this information, the officer detained all three parties . . . .
>
>      . . . . Moreover, the officer did not directly observe the incident[,] rather he watched from a camera of unknown quality and distance from the homeless shelter.

7. At trial, an officer testified that the camera provided a good view and that it had a fish-eye lens capable of zooming in and out and rotating 360 degrees. The officers used a close-up view when observing the conduct at issue. When describing the exchange, an officer testified that he believed money was exchanged because he could see paper that was green, crinkled up, and looked like money, but he could not see the denominations. Thus, the uncontroverted trial evidence shows no reason to question the reliability and adequacy of the officers' observations via the security camera.

¶10    Consistent with the latter argument, Defendant's appellate brief mentions that the facts related to the stop and the alleged consent to search were disputed.[8] However, he did not identify any factual disputes in his motion to suppress. In fact, Defendant's motion discusses only the facts from the police report. "Generally, a defendant who fails to bring an issue before the trial court is barred from asserting it initially on appeal." *State v. Archambeau*, 820 P.2d 920, 922 (Utah Ct. App. 1991). Therefore, our consideration of the State's harmless error argument necessarily focuses on the issues raised in the motion itself. We noted above that the State presented unrefuted evidence

---

8. In his statement of facts on appeal, Defendant states as follows, with citations omitted:

> [Defendant] disputed these facts [regarding the stop and subsequent search] at trial. [Defendant] denied ever coming into contact with the two Hispanic males. He testified that while he was walking north on 200 South, he observed what he believed to be a drug deal between a white male and two Hispanic males. [Defendant] was caught off guard when the officers approached him at 200 South and 400 West. After giving the officers his requested identification, [Defendant] testified that they interrogated him, handcuffed him, and proceeded to search his pant pockets and coat without his consent. To his surprise, [Defendant] testified that while he was being detained and searched, he observed officers release the white male they had stopped along with the two Hispanic males. [Defendant] denied ever buying or possessing any controlled substance or drug paraphernalia.

In addition to contending that the facts are disputed, Defendant argues on appeal that the motion to suppress "sought to suppress the evidence seized and the alleged statements made by [Defendant] because [Defendant] was never advised of his rights." We note that the motion states, "[T]he officer detained all three parties and began to question [Defendant] without advising him of his rights[.]" However, Defendant did not develop a *Miranda* argument in the motion, instead focusing solely on the reliability of the officers' indirect observation of the incident via the security camera. Accordingly, we do not consider this contention. *See State v. Sloan*, 2003 UT App 170, ¶ 13, 72 P.3d 138 (declining to consider an argument that "contains no legal analysis and cites no legal authority").

at trial regarding the quality and location of the camera relative to the drug exchange. Because this undisputed evidence defeats the only argument raised in the motion to suppress, we conclude that the trial court's refusal to consider the motion to suppress was harmless.

¶11   At oral argument, Defendant's counsel stated that an evidentiary hearing need not be limited to the issues raised in a motion to suppress, implying that we can consider the alleged factual dispute on appeal because the trial court could have addressed it at a hearing on the suppression motion had it held one.  It may be within a trial court's purview to consider other grounds for suppression that arise at an evidentiary hearing.  *See, e.g., Evanoff v. State*, 2011 WL 1431520U, at *8 (Tex. App. April 14, 2011) (noting that, at a hearing on a motion to suppress, the parties addressed an issue that had not been raised in the motion).  Nevertheless, it is speculative to suggest that facts contrary to what was in the police report might have emerged at a suppression hearing even though they did not emerge at trial.  Therefore, our review is limited to the issues expressly raised in the motion to suppress and we do not consider any newly claimed factual disputes.[9]  *See Archambeau*, 820 P.2d at 922.

## II.  Chain of Custody

¶12   Defendant also argues that the trial court abused its discretion by admitting evidence of the crack pipe, the cocaine, and a related lab report because the State failed to establish an adequate chain of custody or explain why the cocaine's appearance at trial differed dramatically from its purported appearance at the time of seizure.  "A trial court's determination that there was a proper foundation for the admission of evidence

---

9. We note that Defendant has not argued that the court abused its discretion by failing to hold an evidentiary hearing—and rightly so.  A "defendant bears the burden of showing there are material facts in dispute, and an evidentiary hearing is only required when the motion to suppress raise[s] factual allegations that are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in issue."  *State v. Clegg*, 2002 UT App 279, ¶ 6, 54 P.3d 653 (alteration in original) (citations and internal quotation marks omitted).  Because Defendant's motion to suppress contained only facts taken from the police report, it raised no claims of any factual disputes related to the seizure, Defendant's lack of consent, or any other issue.

will not be overturned unless there is a showing of an abuse of discretion." *State v. Torres*, 2003 UT App 114, ¶ 7, 69 P.3d 314 (citation and internal quotation marks omitted).

¶13 Defendant begins with the premise that the degree of proof needed to establish an uninterrupted chain of custody depends on the nature of the evidence at issue.

> If the evidence is unique, readily identifiable and resistant to change, the foundation for admission need only be testimony that the evidence is what it purports to be. Alternatively, if the evidence is open to alteration or tampering, or is not readily identifiable, the trial court requires a more elaborate chain of custody to establish that the evidence has not been tampered with or altered.

*United States v. Clonts*, 966 F.2d 1366, 1368 (10th Cir. 1992) (internal citation omitted). Defendant also suggests that controlled substances can be easily altered and are susceptible to substitution. *See State v. Petralia*, 521 P.2d 617, 623 (Ariz. 1974). Defendant contends that the cocaine and crack pipe in this case were not unique or "readily identifiable" and that they were susceptible to alteration by tampering or contamination. Therefore, to support their admission into evidence, Defendant insists that the State was required to show "a more stringent foundation entailing a chain of custody of the item with sufficient completeness to render it improbable that the original item has either been exchanged with another or been contaminated or tampered with." *United States v. Cardenas*, 864 F.2d 1528, 1531 (10th Cir. 1989) (emphasis, citation, and internal quotation marks omitted).

¶14 Defendant argues that the chain of custody was broken here because the evidence was mislabeled when it was placed into an evidence locker and the State failed to explain who relabeled and moved it from an evidence locker to the evidence room or where the evidence was prior to the time it was transferred to the Utah State Crime Lab. Defendant contends that the trial court erred by admitting the evidence because the State failed to establish an adequate chain of custody.

¶15 Showing a reliable chain of custody is just one way to authenticate evidence. Evidence is generally admissible if "the trial court is satisfied that the [evidence] has not been changed or altered[.]" *State v. Eagle Book, Inc.*, 583 P.2d 73, 74–75 (Utah 1978).

> Before a physical object or substance connected with the commission of a crime is admissible in evidence there must be a showing that the proposed exhibit is in substantially the same condition as at the time of [the] crime. The circumstances surrounding the preservation and custody of the article and the likelihood of tampering are *factors to be considered* in determining its admissibility. If after consideration of these factors the trial court is satisfied that the article or substance has not been changed or altered, [it] may permit its introduction into evidence.

*Id.* (emphasis added) (citation and internal quotation marks omitted). Once the court admits the evidence, the jury may then "'weigh the evidence based on its assessment of the showing of chain of custody.'" *Torres*, 2003 UT App 114, ¶ 8 (quoting *Eagle Book*, 583 P.2d at 75).

¶16 The trial testimony showed that after seizing the cocaine and a broken glass pipe from Defendant, Officer Flores handed those items to Officer Garaycochea, who subsequently gave them to Officer Naegle to be booked into evidence. When Officer Naegle took the pipe and cocaine to the evidence room at the Salt Lake City Police Department (SLCPD), no evidence technicians were available, so he packaged, sealed, and initialed the evidence before placing it in an evidence locker. However, he used the wrong case number when he labeled the evidence bag and recorded the evidence in the evidence log. When a detective screened the case three days later, he noticed that the evidence log listed no evidence associated with Defendant's case number. He contacted Officers Garaycochea and Flores who informed him that Officer Naegle had placed the items in the evidence locker but had "put it under the wrong case number." An unidentified evidence technician subsequently relabeled the evidence and placed it in the appropriate area of the evidence room.

¶17 About nine months after the evidence was seized, an evidence technician retrieved the evidence from the general property room and gave it to a courier who

delivered it to the Utah State Crime Lab for testing. The forensic chemist who tested the cocaine testified that the package was sealed when it arrived and that her notes about the package did not indicate that it looked as if it had been opened before she received it.

¶18    The State showed that both the evidence lockers and the evidence room are secured areas. The State also explained that once items are placed in an evidence locker or given to an evidence technician, only the evidence technicians have access to it. When officers use an evidence locker to book an item, evidence technicians remove the item from the lockers and place it in the appropriate area of the evidence room. At trial, the witnesses who had handled the evidence uniformly testified that they had not observed any indications that the package containing the evidence had been tampered with. In addition, Officer Naegle testified that he recognized the evidence produced at trial as the items he booked into evidence because the tags on the items contained his name and initials. And Officer Garaycochea described the evidence bag as having the incorrectly numbered label underneath the label with the correct number. The testimony established that the cocaine and the broken glass pipe were in the custody of the State—either the SLCPD or the State Crime Lab—from the moment that Officer Naegle first deposited them in the evidence locker. It is true that the State could not identify which evidence technician corrected the label or moved the evidence from the locker to the evidence room. But the lack of testimony from the evidence technicians who handled the evidence at various times implicates the weight of the evidence, not its admissibility. *See State v. Wynia*, 754 P.2d 667, 671 (Utah Ct. App. 1988) ("A weak link in the chain of custody and any doubt created by it go to the weight of the evidence once the trial court has exercised the discretion to admit it.").

¶19    Defendant also argues that the weight and description of the cocaine tested at the lab and produced at trial were different than the weight and description of the cocaine seized from Defendant. He contends that this supports his argument and suggests a "high probability that the original evidence taken from [Defendant] had been exchanged with another or had been contaminated or tampered with."

¶20    At trial, witnesses testified that the average twist of cocaine weighs between 50 and 100 milligrams. In contrast, the lab report showed that the twist tested at the lab weighed 14 milligrams at the time of testing, an amount barely considered weighable

by lab standards.[10] Defendant contends that this testimony, along with the officers' failure to mention in their police report that the twist was smaller than normal, suggests possible tampering or substitution. However, there is no evidence of the actual weight of the cocaine at the time of seizure. Thus, Defendant's contention—that the weight of the cocaine at the time of testing establishes that the cocaine presented to the lab could be different from the cocaine allegedly seized from Defendant—is speculative.

¶21    Similarly, we are not persuaded by Defendant's argument that the differing description of the cocaine in the police report as compared to the officers' descriptions of the cocaine exhibited at trial suggests tampering. Defendant points out that the police report described the seized cocaine as "hard" and "rocklike," but at trial, the officers described the exhibit as "white particles," "traces of white powder," or "granules." Both of the arresting officers, however, identified the cocaine and pipe introduced at trial as the same items they seized from Defendant. Officer Garaycochea examined the package of cocaine and testified that he recognized its contents as "basically what Detective Flores handed [him]," and Officer Flores identified the glass pipe with its broken end as the same one he removed from Defendant's pocket. Officer Naegle also testified that the "items that are in those packages [produced at trial were in] substantially the same condition as when [he] dropped them off at the evidence [locker]." Thus, notwithstanding the variations in descriptions and the officers' testimony that "these twists pretty much look all the same," that glass pipes are "all very similar," and that the twist produced at trial "look[ed] like any other twist," the trial testimony, if believed by the factfinder, was adequate to establish that the cocaine and pipe introduced into evidence were the same as those seized from Defendant. Any deficiencies in the chain of custody, like the inconsistencies in describing the contraband, go only to the weight of the evidence. *See Wynia*, 754 P.2d at 671.


CONCLUSION

¶22    We conclude that the phrase "prior to the trial" in rule 12(c)(1)(B) of the Utah Rules of Criminal Procedure means prior to the date that the trial actually occurs. As a result, the trial court erred by concluding that Defendant's motion to suppress was

---

10. The Utah State Crime Lab chemist testified that any substance weighing less than ten milligrams is considered "unweighable" because it is merely "residue."

20100474-CA                                 11

untimely. Nonetheless, the error was harmless because the undisputed evidence defeats the only argument that Defendant raised in his motion to suppress. We also reject Defendant's chain-of-custody argument and conclude that the court did not abuse its discretion by admitting into evidence the glass pipe, cocaine, and related lab report.

¶23    Affirmed.


_____
Gregory K. Orme, Judge


-----


¶24    I CONCUR:


_____
James Z. Davis, Judge


-----


THORNE, Judge (dissenting):

¶25    I respectfully dissent from the majority opinion. I agree that the trial court erred in applying rule 12 of the Utah Rules of Criminal Procedure, and I concur in the majority opinion's interpretation of that rule. However, I cannot conclude from the record on appeal that the trial court's ruling was harmless. I would instead remand this matter with instructions that the trial court address any suppression issues raised by Defendant and determine what, if any, relief Defendant may be entitled to.

¶26    I am in agreement with the majority opinion that, pursuant to rule 12, the deadline for Defendant to file suppression motions did not expire until five days prior to his actual March 2010 trial. *See generally* Utah R. Crim. P. 12(c)(1)(B). However, in January 2010, the trial court ruled that the deadline had already passed and rejected

Defendant's suppression motion on that basis. Had the trial court properly applied rule 12, Defendant would have had some two more months in which to identify and raise additional suppression issues. However, in light of the trial court's January ruling, such additional filings would have been rejected as untimely and would therefore have been futile. It is against this backdrop that I dissent from the majority opinion's conclusion that the trial court's misinterpretation of rule 12 constitutes harmless error in this case.

¶27    In order for an error to be deemed harmless, it must be shown that there is no reasonable likelihood of a different result absent the error. *See generally State v. Verde*, 770 P.2d 116, 120 (Utah 1989) (stating that harmless errors are "errors which, although properly preserved below and presented on appeal, are sufficiently inconsequential that we conclude there is no reasonable likelihood that the error affected the outcome of the proceedings"). The majority opinion concludes that the trial court's error was harmless, and does so by (1) limiting its analysis of Defendant's suppression arguments to those arguments actually raised by Defendant in his "untimely" motion to suppress and (2) evaluating those arguments in light of the evidence presented at Defendant's trial. Under the circumstances presented in this case, I believe that both of those approaches are erroneous.

¶28    The majority opinion concludes that the preservation rule limits our consideration of Defendant's suppression arguments to "the issues raised in [Defendant's] motion itself." *See supra* ¶ 10. But this is not an ordinary preservation case. Defendant received newly appointed counsel in early October 2009, and at a November 6 pretrial conference new counsel informed the court that she intended to file a motion to suppress. The trial court indicated at that time that it would rule such a motion to be untimely filed. When the State successfully sought to continue the December 2009 trial, Defendant's counsel proceeded to file a motion to suppress on January 8, 2010. At a January 15 pretrial conference, the trial court denied Defendant's motion as untimely and set trial for March 17.

¶29    Pursuant to rule 12, the trial court's rescheduling of trial to March 17 reset the deadline for the filing of suppression motions to March 12. *See* Utah R. Crim. P. 12(c)(1)(B) (requiring motions to suppress to be filed at least five days prior to trial). Thus, Defendant's new counsel had an additional two months in which to familiarize herself with the case and identify and present any additional suppression issues to the

trial court.[1]  However, the trial court's rule 12 decision put Defendant on clear notice that the filing of any further suppression motions would be futile, as they would also be deemed untimely.  I cannot fault Defendant for declining to file such futile motions, and I do not believe that the filing of clearly futile motions is required to preserve issues in the trial court.  *Cf. State v. Rothlisberger*, 2004 UT App 226, ¶ 29, 95 P.3d 1193 ("[P]arties are not required to make futile objections in order to preserve a future claim."); *In re J.W.*, 2001 UT App 208, ¶ 15 n.4 , 30 P.3d 1232 (stating that, in light of the parties' arguments and the trial court's adverse ruling, an appellant had "preserved the sufficiency of the evidence issue and any further objections or motions regarding this issue would have been futile").

¶30     In light of the trial court's erroneous ruling precluding Defendant from raising any further suppression issues, I believe it inappropriate to limit the harmless error analysis to those issues actually raised in Defendant's motion.  Because Defendant's new counsel was prevented from identifying and briefing any new issues, it is impossible to determine whether such issues might have had merit and resulted in a better result for Defendant.  Had the trial court simply denied Defendant's motion on the merits without erroneously precluding future motions, then I agree that the majority opinion's application of the preservation rule would be correct.  But because the trial court's erroneous ruling precluded Defendant's new counsel from evaluating the situation and raising suppression issues as she deemed appropriate, it would be unwise to utilize the normal preservation rule.

¶31     I also disagree with the majority opinion's evaluation of Defendant's suppression motion utilizing the evidence adduced at trial.  The issue at trial was Defendant's guilt, and suppression-related issues such as reasonable suspicion or consent were addressed only tangentially, if at all.  Had the trial court properly considered Defendant's suppression arguments, Defendant would likely have received an evidentiary hearing focused exclusively on his arguments.  Such a hearing would have specifically addressed Defendant's suppression issues, resulting in different questions and

---

1. At the January 15 pretrial conference, the trial court was apprised that Defendant's counsel had been recently assigned and observed, in response to the State's argument that suppression issues should have been presented by Defendant's prior attorneys, that "[new counsel] is an excellent attorney.  And maybe she does see things differently than those previous attorneys that have come before her . . . ."

testimony and perhaps in additional witnesses. Defendant himself would have been able to testify at a suppression hearing without concern that the details surrounding his stop and search might reflect negatively on him before a jury.[2] However, because a separate suppression hearing was never conducted, I cannot say with any confidence that the evidence and ultimate result might not have been more favorable to Defendant.

¶32 Because the trial court's error deprived Defendant of both the ability to present potential suppression issues and a meaningful hearing on those issues, I am unwilling to declare that error to be harmless. However, I am also disinclined to disturb a jury verdict based on speculation about whether Defendant might have been able to suppress evidence. Under the circumstances, I believe that the appropriate remedy is a remand to the trial court with instructions to allow Defendant an appropriate period of time in which to brief any suppression issues he wishes to raise. The trial court should then conduct appropriate proceedings to resolve Defendant's motion or motions. If Defendant fails to demonstrate that evidence should be suppressed, then Defendant's existing convictions and sentence should stand. However, if any suppression is warranted, the trial court would then have to determine the effect on Defendant's convictions and sentence. *Cf. State v. Bergeson*, 2010 UT App 281, ¶ 9, 241 P.3d 777 (mem.).

¶33 In sum, I cannot conclude that the trial court's erroneous application of rule 12(c)(1)(B) was harmless. I would remand this matter to the trial court with instructions that it give Defendant an opportunity to present his suppression arguments, conduct such proceedings as are necessary to rule on those arguments, and determine what, if any, relief Defendant might be entitled to as a result. Accordingly, I respectfully dissent from the majority opinion.

_____

William A. Thorne Jr., Judge

_____

2. Defendant did testify at his trial, but testimony before a jury is obviously more problematic than testimony at a suppression hearing.