2014 UT App 242

# THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF A.O., A.O., R.O., J.O., E.P.,
AND K.C., PERSONS UNDER EIGHTEEN YEARS OF AGE.

D.T.O.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Opinion
No. 20130901-CA
Filed October 17, 2014

Second District Juvenile Court, Farmington Department
The Honorable J. Mark Andrus
No. 1068306

Scott L. Wiggins, Attorney for Appellant

Sean D. Reyes and John M. Peterson, Attorneys
for Appellee

Martha Pierce and Tracy Mills, Guardian ad Litem

JUDGE GREGORY K. ORME authored this Opinion, in which JUDGES
JAMES Z. DAVIS and MICHELE M. CHRISTIANSEN concurred.

ORME, Judge:

¶1      At the conclusion of a child welfare proceeding, the juvenile
court determined that D.T.O. (Father) had neglected the six
children under his care and that he had sexually exploited his then-
seventeen-year-old daughter. Based on these conclusions and the
detailed findings underlying them, the juvenile court placed the
children in the custody of the Division of Child and Family

Services. Father appeals this adjudication, arguing that the juvenile court improperly relied on evidence obtained through illegal searches, that the State's expert witness should not have been allowed to testify at trial, and that some evidence admitted by the court lacked adequate foundation. We affirm.

BACKGROUND[1]

¶2     During the investigation of a report that Father had provided cigarettes to some of his children's teenage friends, one of the friends told law enforcement officers that Father was trading alcohol and tobacco for sexually explicit images. Based on this information, law enforcement officers obtained a warrant to search Father's house for "[c]ell phones, computers, electronic devices, thumb drives, DVDs, CDs or other such items containing images of known juvenile females (15 years old) in various stages of undress." After conducting a search of the residence and collecting a number of computers, cell phones, thumb drives, and other electronic devices, law enforcement officers obtained a second warrant to examine the contents of these devices for evidence of sexual exploitation of minors. On one thumb drive taken from Father's bedroom, investigators found naked self-portraits of Father's teenage daughter, naked photos of several unknown girls, a video of the daughter undressing, and "up-skirt and down-blouse" style photos of the daughter taken when she was fourteen years old. This thumb drive also contained images of Father and sexually explicit images of his wife. Investigators also found over one hundred images of child pornography on one of the computers.

---

1. In reviewing a determination that children have been abused or neglected, we "recite the facts in a light most favorable to the juvenile court findings." *See In re L.M.*, 2001 UT App 314, ¶ 2, 37 P.3d 1188.

¶3      During the child welfare proceeding, Father moved the juvenile court to suppress all evidence obtained through the search warrants because, according to him, the search warrants lacked probable cause.[2] Accordingly, he argued, the searches were in violation of both the United States and Utah constitutions. On this basis, he contended that the juvenile court should apply the exclusionary rule, a "judicially created remedy" designed to deter law enforcement from benefitting from unlawful searches. *See Arizona v. Evans*, 514 U.S. 1, 10 (1995). Without reaching the merits of Father's probable cause argument, the juvenile court rejected the motion because it determined that "the exclusionary rule does not apply except in criminal proceedings or quasi-criminal proceedings and . . . a child welfare proceeding is not criminal or quasi-criminal."

¶4      In addition to physical evidence, the teenage friends testified that Father fondled their breasts, took nude pictures of them, asked them to text him sexually explicit images and videos, and showed them sexually explicit images of their friends that he kept on his phone. They also explained how Father used his children as lookouts to prevent his wife—their mother—from discovering what was happening.

¶5      Later in the proceeding, the State called a forensic examiner to testify about the evidence recovered from Father's electronic devices. Father objected because the forensic examiner appeared to be offering expert testimony and the State had not provided the proper notice. The juvenile court sustained Father's objection and granted a continuance for the State to remedy the error and to provide Father with adequate time to prepare. At the time, Father

---

2. Father also claims that the second search warrant was untimely executed. Because we determine that the exclusionary rule simply does not apply in the child welfare context, *see infra* ¶ 15, "it is unnecessary to consider in this case whether the searches by police officers were unreasonable," *see In re A.R.*, 1999 UT 43, ¶ 23, 982 P.2d 73.

agreed with this curative measure. But when the proceeding was reconvened, Father moved to have the expert witness excluded entirely from testifying. Interpreting rule 20A of the Utah Rules of Juvenile Procedure, the juvenile court rejected Father's motion, on the rationale that it had modified the requirements of the rule, as permitted by the terms of the rule, to provide Father with adequate notice.

¶6     Near the conclusion of the proceeding, the State's witnesses could not testify with certainty about the precise location within Father's bedroom where they had found two thumb drives, one of which contained incriminating evidence. Father objected, arguing that this confusion created a chain-of-custody problem and that the evidence should not be admitted. The juvenile court then required the State to provide additional evidence about the chain of custody. After hearing the additional evidence, the juvenile court stated, "It's true they don't know if that's just two thumb drives that came from the master bedroom closet or from the master bedroom dresser, but it came from one of the two and so I'll admit [it]."

¶7     After holding five days of evidentiary hearings over the course of almost four months, the juvenile court determined, among other things, that the children in the household were neglected and that Father had sexually exploited his daughter.[3] Accordingly, it granted custody of the children to the Division of Child and Family Services. Father now appeals.

ISSUES AND STANDARDS OF REVIEW

¶8     Father first argues that the searches were in violation of the Utah Constitution and that the juvenile court erred in refusing to exclude the evidence obtained in the searches. Whether an

---

3. According to the State, there is a "parallel criminal investigation" involving Father's unlawful activities with his daughter and the teenage girls who testified against him during the trial in this case.

exclusionary rule based on the Utah Constitution should apply in child welfare proceedings is a constitutional issue that we review for correctness. *See In re L.M.*, 2013 UT App 191, ¶ 5, 308 P.3d 553.

¶9    Next, Father argues that the juvenile court misapplied rule 20A of the Utah Rules of Juvenile Procedure when it allowed the State's expert witness to testify. The juvenile court's interpretation of this rule presents a question of law that we review for correctness. *See In re S.M.*, 2007 UT 21, ¶ 15, 154 P.3d 835.

¶10    Finally, Father contends that the juvenile court erred by admitting evidence that lacked proper foundation because of problems with the chain of custody. We will reverse a court's determination that there was proper foundation to admit evidence only if the court abused its discretion. *See State v. Torres*, 2003 UT App 114, ¶ 7, 69 P.3d 314.

ANALYSIS

A.    Exclusionary Rule

¶11    Although the Utah Supreme Court, in applying the requirements of the United States Constitution, has made it clear that Utah courts should not apply the exclusionary rule in child welfare proceedings, *see In re A.R.*, 1999 UT 43, ¶ 23, 982 P.2d 73, Father urges us to fashion a more broadly applicable exclusionary rule based on the Utah Constitution. We decline to do so.

¶12    Father devotes much of his brief to arguing that although the language forbidding unlawful searches found in the Utah Constitution is effectively identical to the language forbidding unlawful searches found in the United States Constitution, the historical context peculiar to Utah requires us to read Utah's ban on unlawful searches more broadly. *Compare* Utah Const. art. I, § 14, *with* U.S. Const. amend. IV. *See* Kenneth R. Wallentine, *Heeding the Call: Search and Seizure Jurisprudence Under the Utah Constitution,*

*Article I, Section 14*, 17 J. Contemp. L. 267, 280 (1991). Father is not without support in this assertion. For example, in *State v. Thompson*, 810 P.2d 415, 418 (Utah 1991), the Utah Supreme Court held that under the Utah Constitution a person has "a right to be secure against unreasonable searches and seizures of their bank statements," even though the United States Supreme Court earlier held in *United States v. Miller*, 425 U.S. 435, 442 (1976), that under the federal Constitution there was no "legitimate 'expectation of privacy'" in bank statements.

¶13     However, even if we were to adopt Father's basic reasoning in this regard, it would not render the juvenile court's decision incorrect. Recognizing a more expansive expectation of privacy under the Utah Constitution would necessarily broaden the circumstances under which we would determine that searches are unreasonable, but it would not alter the nature of child welfare proceedings. As the Utah Supreme Court explained, the "determination of whether the [exclusionary] rule applies depends upon the nature of the proceeding rather than the circumstances under which the evidence was collected." *In re A.R.*, 1999 UT 43, ¶ 15. So, while our Supreme Court in *In re A.R.* was concerned only with the requirements of the federal Constitution, *see id.* ¶ 14, its reasoning on the inapplicability of the exclusionary rule to child welfare proceedings is still on point:

> The primary focus of and sole statutory justification for child protection proceedings is to protect the interests of children who are neglected or abused. . . . Although parents may suffer a severe detriment in losing temporary or permanent custody of their children, punishment of the parents is not the purpose of the proceeding.

*Id.* ¶ 18.

¶14     Not only are a parent's privacy rights subordinate in a child welfare proceeding to a child's safety, but the Utah Supreme Court

has further determined that the relative value of the exclusionary rule as a deterrent is greatly diminished as well:

> There appears to be little likelihood that any substantial deterrent effect on unlawful police intrusion would be achieved by applying the exclusionary rule to child protection proceedings. Whatever deterrent effect there might be is far outweighed by the need to provide for the safety and health of children in peril.

*Id.* ¶ 21.

¶15 Thus, the nature of a child welfare proceeding remains the same in relation to the Utah Constitution as it is to the United States Constitution, and the same reasoning serves to make the exclusionary rule inapplicable under either analysis, even if the scope of the constitutional privacy protection is more expansive under the state constitution. Accordingly, we conclude that the juvenile court was correct in determining that the exclusionary rule does not apply in child welfare proceedings under either the United States or Utah constitution. It was therefore proper for the juvenile court to deny Father's motion to suppress the key evidence against him.

B.     Expert Testimony

¶16 Father asserts that the juvenile court erred when it allowed the State's expert witness to testify after the State initially failed to give proper notice under rule 20A of the Utah Rules of Juvenile Procedure that it would call an expert to testify. Rule 20A requires that "[a]ny person who has been identified as an expert whose opinions may be presented at the adjudication trial must be disclosed by the party intending to present the witness at least ten days prior to the trial or hearing *unless modified by the court*." Utah R. Juv. P. 20A(h)(1) (emphasis added). Furthermore, a "party may not present the testimony of an expert witness without complying

with this paragraph (h) unless the court determines that good cause existed for the failure to disclose." *Id*. R. 20A(h)(3). When construing a procedural rule, "we look to the express language of that procedural rule and to the cases interpreting it." *First Equity Fed., Inc. v. Phillips Dev., LC*, 2002 UT 56, ¶ 11, 52 P.3d 1137.

¶17 In this case, the State called a forensic examiner to testify about the evidence he found on a thumb drive and on a computer taken from Father's house. Father's attorney objected that due notice of expert testimony had not been given, and the juvenile court sustained the objection. Instead of making a determination about whether the State had good cause for its failure to give notice, the juvenile court opted instead to grant a "limited continuance . . . to allow the State to give proper notice." At the time, Father's attorney agreed with the continuance, stating, "That's what I would ask for, Judge." Accordingly, the State filed a summary of the expert testimony, leaving Father with the requisite ten days to review the information and prepare to meet it. When the proceeding reconvened, Father nevertheless moved to exclude the expert witness altogether, arguing that there was not "good cause" for the State's failure to give Father adequate notice and, therefore, that the State could not present the testimony. *See* Utah R. Juv. P. 20A(h)(3). The juvenile court judge rejected this motion, stating,

> I'm not finding that good cause existed for the State's failure to identify [the witness] as an expert witness. I am finding that I modified the requirement by granting the continuance so that counsel would have the ten day's notice anticipated by the rule and that ten day's notice has been provided and so I've modified the rule in that case.

¶18 We agree with the juvenile court's interpretation of the rule. Here, the phrase "unless modified by the court" means precisely what it purports to mean—that the juvenile court can modify the ten-day notice requirement. By its express terms, rule 20A(h)(1)

gives the juvenile court discretion to adjust the notice requirement. *See* Utah R. Juv. P. 20A(h)(1). The juvenile court chose to exercise this discretion in a substantially fair manner, granting a continuance so that the State could still present its expert witness but giving Father ample opportunity to consider the evidence before being required to meet it. Because we conclude that the juvenile court acted within the express terms of rule 20A(h)(1) and modified the notice requirement in an appropriate manner, we must also conclude that the witness's testimony ultimately complied with rule 20A(h). Thus, there was no need for the juvenile court to also determine, pursuant to rule 20A(h)(3), whether the State had good cause for failing initially to comply. Thus the juvenile court was correct to deny Father's motion to exclude the expert witness.

C.      Chain of Custody

¶19     Finally, Father argues that there was testimonial confusion about precisely where police had found a thumb drive containing incriminating evidence and that this confusion rendered the evidence inadmissible. The Utah Rules of Evidence require that before a party can introduce an item as evidence, the proponent must show that the "item is what the proponent claims it is." Utah R. Evid. 901(a). Such evidence is generally admissible if the court is satisfied that the evidence has not been changed or altered. *See State v. Smith*, 2012 UT App 370, ¶ 15, 293 P.3d 1148 (dealing with chain-of-custody issues in a criminal trial).

¶20     In this case, Father's primary contention is that the chain of custody of the thumb drive was inadequate, which, he argues, indicates that the evidence is not necessarily what the State claimed it was. After the juvenile court found Father's initial foundational objection to be well taken, the State presented detailed evidence about who found the thumb drives, who bagged them, who photographed them on site, who logged them, who collected them, who transported them, who checked them out, and who examined them. Additionally, the State's expert witness testified about the

measures he took to prevent any tampering or accidental changes to the thumb drives. In the end, the juvenile court concluded that the only remaining question was whether the thumb drives, one of which contained the incriminating evidence, came from Father's nightstand or from Father's closet. Considering all this, it was entirely reasonable for the juvenile court to conclude that the exact location did not matter, as both thumb drives came from Father's bedroom,[4] and that the thumb-drive evidence had not been changed or altered and that it was what the State claimed it to be.[5] Accordingly, the juvenile court was well within its discretion to admit the thumb-drive evidence.

CONCLUSION

¶21    The exclusionary rule does not apply to child welfare proceedings under either the United States Constitution or the Utah Constitution. Therefore, the juvenile court correctly denied Father's motion to exclude the evidence obtained through the search warrants. The juvenile court did not abuse its discretion when it modified the expert-witness notice requirement under rule 20A of the Utah Rules of Juvenile Procedure. Finally, the juvenile court did not abuse its discretion in admitting the thumb-drive

---

4. It is easy to conceive of a situation in which the location at which each thumb drive was found would matter, such as if one were found in Father's nightstand and one were found in the garage or living room, to which any number of people would have ready access. In that scenario, it would be critical to know whether the thumb drive with the incriminating evidence was the one found in Father's nightstand or the one found in, say, the garage.

5. Morever, in addition to the incriminating evidence, the thumb drive contained images of Father and sexually explicit images of his wife. The State persuasively argues that the content of the thumb drive itself suggests that the thumb drive did, in fact, belong to Father.

evidence given the chain-of-custody and other foundational evidence before it.[6]

¶22    With the failure of these three legal challenges to the juvenile court's disposition, it follows that the decision depriving Father of custody of the children must be affirmed. For good reason, Father does not alternatively challenge the sufficiency of the evidence to support the juvenile court's findings nor the adequacy of the findings to sustain its judgment.

¶23    Affirmed.

———————

6. Father also asserts that the cumulative effect of all the alleged errors warrants a new trial. "Under the cumulative error doctrine, we will reverse only if 'the cumulative effect of the several errors undermines our confidence . . . that a fair trial was had.'" *State v. Dunn*, 850 P.2d 1201, 1229 (Utah 1993) (quoting *Whitehead v. American Motors Sales Corp.*, 801 P.2d 920, 928 (Utah 1990)). Because we conclude that the juvenile court committed no error, it follows that the cumulative-error doctrine is inapplicable.