2019 UT App 157

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
GLENN CONWAY HUNTER,
Appellant.

Opinion
No. 20180249-CA
Filed September 26, 2019

Third District Court, West Jordan Department
The Honorable William K. Kendall
No. 161401898

Teresa L. Welch, Attorney for Appellant

Sean D. Reyes and William M. Hains, Attorneys
for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES GREGORY K. ORME and KATE APPLEBY concurred.

MORTENSEN, Judge:

¶1   Clad in camouflage pants, a black hoodie, black sunglasses, a black hat, and a gold chain necklace, Glenn Conway Hunter distributed methamphetamine and was observed by two police officers (Officers) surveying the area for just such activities. The Officers directed an arrest team to apprehend Hunter, and in addition to the methamphetamine, the Officers also found a handgun in his possession. A jury convicted Hunter of possession of a controlled substance with intent to distribute and possession of a firearm by a restricted person. Hunter challenges the distribution conviction on appeal, claiming misidentification and ineffective assistance of counsel in failing to request a *Long* instruction. We affirm.

BACKGROUND[1]

*The Arrest*

¶2      Around 7:30 on a June evening, the Officers were conducting surveillance of possible drug dealing near a Salt Lake City homeless shelter. From a building approximately 100 yards away, the Officers used binoculars to observe the area. The weather was temperate and provided adequate lighting for the Officers to clearly see several dozen people near the shelter.

¶3      While observing the area from adjoining rooms and communicating with each other by radio, the Officers noticed what appeared to be—and in fact was—a drug transaction. They watched a white man (Buyer) approach and hand cash to a black man (Seller). After receiving the cash, Seller retrieved a plastic bag containing a white, grainy substance from his pocket and handed some of the substance from the bag to Buyer. The substance was later determined to be methamphetamine. During this quick transaction,[2] Seller was leaning against a fence, facing toward the Officers. He wore camouflage pants, a black hooded sweatshirt, black sunglasses, a black hat, and a gold chain necklace. Buyer had his back toward the Officers and wore a white tank top and light-colored pants.

¶4      After the brief exchange, Buyer began to walk away, but as he did, the Officers directed a team of officers to apprehend him. The arrest team closed in on Buyer, and the Officers focused their attention on him to ensure that the correct

---

1. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly." *State v. Maese*, 2010 UT App 106, ¶ 2 n.2, 236 P.3d 155.

2. One of the Officers testified that the transaction lasted "20 seconds or so."

individual was arrested. Buyer quickly left the Officers' field of vision, however, so the Officers returned their attention to Seller. Seller was still standing in the same location and was still wearing the same clothing: camouflage pants, a black hooded sweatshirt, black sunglasses, a black hat, and a gold chain necklace. Immediately thereafter, the arrest team confirmed via radio that they had arrested Buyer, who was in possession of methamphetamine.

¶5    With this information, the Officers described Seller, his location, and what he was wearing; then they directed another arrest team to detain him. The Officers watched and verified that the second arrest team had detained Seller. Seller was arrested, found in possession of a handgun and over five grams of methamphetamine. He then was identified as Hunter.

*The Trial*

¶6    The State charged Hunter with possession of a firearm by a restricted person, distribution of a controlled substance, and possession of a controlled substance.[3] However, the State ultimately dismissed the possession of a controlled substance charge based on merger.[4] The case went to trial, and at the close of the State's case-in-chief, Hunter moved for a directed verdict on the distribution of a controlled substance charge. He argued

---

3. *See* Utah Code Ann. § 76-10-503(2)(a) (LexisNexis 2018); *id.* § 58-37-8(1)(a)(ii), (2)(a)(i). Because the statutory provisions in effect at the relevant time do not differ in any material way from those now in effect, we cite the current version of the Utah Code.

4. Under Utah Code section 76-1-402(3), "a defendant may not be convicted of both the offense charged and a lesser included offense." *State v. Garrido*, 2013 UT App 245, ¶ 31, 314 P.3d 1014 (cleaned up).

that the State failed to "present sufficient evidence . . . that [he] was the individual who was at the scene . . . [and] was the individual who distributed that methamphetamine" primarily because the Officers "took [their] eyes off the person" who had sold the methamphetamine. Hunter also argued that there was no evidence that the white substance in his bag was the lab-tested methamphetamine due to problems with the chain of custody. He specifically asserted that there was a break in the chain of custody because documentation of the evidence did not explicitly identify one of the officers who handled the bag.

¶7     The trial court denied Hunter's motion on both points. It concluded that "the testimony was sufficient to show both the identification of [Hunter] as the person who handed the [methamphetamine], as well as the other individual . . . to whom [Hunter] handed the [methamphetamine]." As to Hunter's chain-of-custody argument, the court reviewed the arresting officers' testimony regarding the evidence and stated that although there were "some issues with the chain of custody," those issues went to the weight of the evidence, and they could be considered by the jury. During closing arguments, Hunter conceded that he was guilty of possession of a firearm by a restricted person.

¶8     The jury convicted Hunter, as charged, of possession of a firearm by a restricted person and distribution of a controlled substance. Hunter appeals.


ISSUES AND STANDARDS OF REVIEW

¶9     Hunter raises two issues on appeal. First, he contends that he received ineffective assistance of counsel because his attorney did not request a cautionary instruction under *State v. Long*, 721 P.2d 483, 492 (Utah 1986). "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Ott*, 2010 UT 1, ¶ 16, 247 P.3d 344 (cleaned up).

Second, Hunter contends that there was insufficient evidence to support the jury verdict. "When a jury verdict is challenged on the ground that the evidence is insufficient, we review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict." *State v. Hirschi*, 2007 UT App 255, ¶ 15, 167 P.3d 503 (cleaned up). "And we will not reverse a jury verdict if we conclude that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *State v. Maestas*, 2012 UT 46, ¶ 177, 299 P.3d 892 (cleaned up).

ANALYSIS

¶10     We address Hunter's contentions in turn and disagree with him on both points.

I. Ineffective Assistance of Counsel

¶11     Hunter's counsel did not render ineffective assistance. To prevail on an ineffective assistance of counsel claim, a defendant must establish that counsel's performance was objectively deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Wilder*, 2018 UT 17, ¶ 17, 420 P.3d 1064. "Because both prongs of the *Strickland* test must be met to establish ineffective assistance of counsel, we need not always address both prongs." *State v. Goode*, 2012 UT App 285, ¶ 7 n.2, 288 P.3d 306. Here, because we conclude that Hunter's counsel was not deficient, we do not address the prejudice prong.

¶12     Hunter's argument that he received ineffective assistance of counsel fails before it even starts because *Long* doesn't apply to this case. Under *Long* and its progeny, trial courts must give a cautionary jury instruction "whenever eyewitness identification is a central issue in a case and such an instruction is requested by the defense." *State v. Long*, 721 P.2d 483, 492 (Utah 1986). On the

other hand, when eyewitness identification is not a central issue, "the trial court retains significant discretionary authority to refuse to submit such an instruction to the jury." *State v. Robertson*, 2005 UT App 419, ¶ 12, 122 P.3d 895. We recently clarified that real-time identifications fall "in a different category than [those] contemplated in *Long*" because "eyewitness identification based on *memory* is the key factor" in requiring such an instruction. *State v. Bowdrey*, 2019 UT App 3, ¶¶ 16, 19, 438 P.3d 946, *cert. denied*, 440 P.3d 693.

¶13 In *Bowdrey*, an officer using a spotting scope observed the defendant dealing drugs and directed an arrest team to apprehend him. *Id.* ¶¶ 3–5. The officer then went to the location of the arrest and verified that the defendant was the one he had seen dealing drugs. *Id.* ¶ 6. At trial, the defendant's attorney requested a *Long* instruction, which the court denied. *Id.* ¶ 9. We affirmed, clarifying that a *Long* instruction was inapplicable in this situation because the key concern in *Long* is memory. *Id.* ¶ 16. We explained that "*Long* and its progeny all share in common eyewitness identifications based on *memory* and made after—sometimes years after—the incident in question." *Id.*

¶14 Here, the Officers' contemporaneous identification of Hunter was nearly identical to the real-time identification of the defendant in *Bowdrey*. *See id.* ¶¶ 3–5. The Officers directly observed Hunter while he sold drugs to Buyer. Although the Officers momentarily focused on Buyer as he left the scene, they had already identified Hunter contemporaneously as he sold the drugs, and the Officers observed this entire, continuous event in real time. The Officers' fleeting focus on Buyer did not place their observation of Hunter's drug dealing in the realm of *Long*. *See id.* ¶ 9. Additionally, although Hunter argues that the Officers' eyewitness identification of Hunter was memory based because it was interrupted by their focus on Buyer, a mere momentary shift in focus while perceiving real-time events is not

the type of memory-based eyewitness identification that the *Long* instruction addresses.

¶15 Because real-time identifications fall into a different category than *Long* altogether, Hunter's counsel was not objectively deficient in failing to request a *Long* instruction. Such a request would have been futile. Counsel is not ineffective for declining to make a request that would have been properly denied. *See State v. Hauptman*, 2011 UT App 75, ¶¶ 8–10, 249 P.3d 1009 (holding that counsel was not ineffective in failing to request a jury instruction on the lesser-included offense of sexual battery because the evidence did not support such an instruction, and thus a request would have been denied); *see also Menzies v. State*, 2014 UT 40, ¶ 223, 344 P.3d 581 ("[C]ounsel was not ineffective in failing to challenge the beyond reasonable doubt instruction because the claim would have almost assuredly failed."); *State v. Kelley*, 2000 UT 41, ¶ 26, 1 P.3d 546 ("Failure to raise futile objections does not constitute ineffective assistance of counsel."). Accordingly, Hunter's ineffective assistance of counsel claim fails.

## II. Insufficient Evidence

¶16 The evidence was sufficient to support Hunter's conviction. "In considering an insufficiency-of-evidence claim," an appellate court will not reverse a jury verdict provided it can "conclude that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *State v. Maestas*, 2012 UT 46, ¶ 177, 299 P.3d 892 (cleaned up).

¶17 Hunter argues that his "conviction was based on speculation and not reasonable inferences because of the unreliable eyewitness identifications of [him] and problematic chain of evidence procedures." More specifically, Hunter argues that "the officers took down the wrong person" because he was not the same man the Officers observed interacting with Buyer.

However, the evidence shows that (1) the Officers observed the drug sale; (2) the Officers identified Hunter as the same person, in the same location, and wearing the same clothing—camouflage pants, a black hooded sweatshirt, black sunglasses, a black hat, and a gold chain necklace—as the individual they observed interacting with Buyer; and, (3) Hunter was found in possession of over five grams of methamphetamine, which was the same drug Buyer possessed. Thus, the direct and circumstantial evidence were more than sufficient for a reasonable jury to determine that Hunter was the person the Officers observed dealing drugs.

¶18 Hunter also argues that there was insufficient evidence because "the pertinent documents do not sufficiently identify with explicit clarity . . . all of the individuals who received, packaged, and transported" the methamphetamine found on Hunter, and thus the State could not prove that the substance he possessed was methamphetamine. However, this incorrectly heightens the requirement for admitting evidence. To admit physical evidence, a trial court must only "be convinced that the proposed [evidence] is in substantially the same condition when introduced into evidence as it was when the crime was committed." *State v. Griffin*, 2016 UT 33, ¶ 26, 384 P.3d 186 (cleaned up). Moreover, "'[o]nce the evidence is in the hands of the state, it is generally presumed that the exhibits were handled with regularity, absent an affirmative showing of bad faith or actual tampering.'" *Id.* (quoting *State v. Wynia*, 754 P.2d 667, 671 (Utah Ct. App. 1988)).

¶19 There is no requirement that the chain of custody be established by clear documentation—or any documentation at all for that matter. *See, e.g.*, *State v. Smith*, 2012 UT App 370, ¶ 21, 293 P.3d 1148 ("The *trial testimony*, if believed by the factfinder, was adequate to establish that the cocaine and pipe introduced into evidence were the same as those seized from [the] defendant." (emphasis added) (cleaned up)). Here, there was

testimony from those who handled the methamphetamine from Hunter's arrest to its testing, and the trial court properly ruled that any chain-of-custody issues went to the weight of the evidence and could be considered by the jury. *See Griffin*, 2016 UT 33, ¶ 32.

¶20   In short, we conclude that the evidence was sufficient to support Hunter's conviction.

CONCLUSION

¶21   Because the Officers' identification of Hunter was based on real-time observation, this was not a *Long* case, and consequently Hunter's counsel was not deficient for failing to request a cautionary instruction. Additionally, the evidence was sufficient to support the jury's verdict. Therefore, we affirm.

_____