2019 UT App 159

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
LUKE ALLEN MOORE,
Appellant.

Opinion
No. 20160931-CA
Filed September 26, 2019

Third District Court, Salt Lake Department
The Honorable Vernice S. Trease
No. 20160931

Debra M. Nelson and E. Rich Hawkes, Attorneys
for Appellant

Sean D. Reyes and Lindsey Wheeler, Attorneys
for Appellee

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and JILL M. POHLMAN concurred.

HAGEN, Judge:

¶1    Luke Allen Moore appeals his conviction for Driving Under the Influence of Alcohol/Drugs (DUI), arguing that the district court abused its discretion by admitting blood toxicology evidence where the State did not present direct evidence of how his blood samples were handled between the time the crime lab received the samples and when they were tested. Moore contends that the absence of this evidence created a gap in the chain of custody that rendered the blood toxicology evidence inadmissible for lack of authentication. We conclude that the district court did not abuse its discretion by admitting the toxicology report because the State presented sufficient evidence that the tested blood samples were in substantially the same

condition as when they were collected and Moore failed to rebut the presumption that the State properly handled the blood samples once they were delivered to the crime lab. And, in any event, there was no evidence to suggest that potential mishandling would have substantially altered the evidence. Accordingly, we affirm Moore's DUI conviction.

¶2     Moore also contends that the district court improperly sentenced him for a class C misdemeanor, rather than an infraction, for Failure to Stay in One Lane. The State concedes this point, and we therefore vacate and remand to the district court with instructions to enter Moore's conviction for Failure to Stay in One Lane as an infraction and adjust the sentence accordingly.

BACKGROUND[1]

¶3     In the early morning of August 14, 2014, an officer stopped Moore for driving with a broken brake light and failing to stay in the proper lane. After noticing multiple signs of intoxication and administering a series of field sobriety tests, the officer arrested Moore for driving under the influence. Following Moore's arrest, the officer obtained a search warrant to get a sample of Moore's blood for a toxicology test.

¶4     A certified phlebotomist carried out the warrant and drew Moore's blood. The phlebotomist collected Moore's blood in two vials, each containing preservatives to prevent degradation of the samples. Both vials were labeled with a sticker that provided Moore's name, his date of birth, the case report number, the date and time of the blood draw, and the phlebotomist's initials. To

---

1. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly." *State v. Holgate*, 2000 UT 74, ¶ 2, 10 P.3d 346 (cleaned up).

protect the integrity of the blood samples against tampering, the phlebotomist placed tamper-resistant blue tape over the top of each vial and initialed the tape. As an additional protection against tampering, the phlebotomist placed the vials into an envelope, sealed the envelope with clear tape, and initialed that tape. Finally, the phlebotomist placed the envelope in a locked evidence refrigerator and filled out a chain of evidence form for the blood samples.

¶5     About seven hours after the phlebotomist placed the blood samples in the evidence refrigerator, an evidence technician filled out the toxicology request form, retrieved the vials of Moore's blood, and took them to the Utah Public Health Laboratories (the crime lab). After verification that the samples were properly labeled and that the tamper-resistant tape was intact, the evidence technician turned the samples over to a crime lab technician and received a receipt for the samples. The identity of the crime lab technician was not recorded.

¶6     Four days later, a toxicologist retrieved the samples from the crime lab refrigerator and tested Moore's blood to determine its alcohol content. The resulting toxicology report revealed that Moore's blood alcohol content was .16, twice the then-legal limit for driving in Utah. *See* Utah Code Ann. § 41-6a-502(1)(a) (LexisNexis 2014). At trial, the toxicologist testified that it was the crime lab's regular procedure to refrigerate any blood samples shortly after they are received. She further testified that the preservatives in the vials would prevent unrefrigerated blood from degrading for several days, and that any blood degradation would likely lower its alcohol content.

¶7     A jury convicted Moore of DUI, Failure to Stay in One Lane, and other charges not relevant to this appeal. He now appeals his DUI conviction and the classification of his conviction for the lane violation.

### ISSUES AND STANDARDS OF REVIEW

¶8 Moore raises two issues on appeal. First, Moore argues that the district court abused its discretion by admitting the blood toxicology report into evidence without requiring the State to lay adequate foundation. Specifically, he contends that the State did not establish that the tested blood was in substantially the same condition as when it was collected because of a "missing link" in the chain of custody. On appeal, "the legal questions underlying the admissibility of evidence" are reviewed for correctness, but a district court's "determination that there was a proper foundation for the admission of evidence" is reviewed for "abuse of discretion." *State v. Griffin*, 2016 UT 33, ¶ 14, 384 P.3d 186 (cleaned up).

¶9 Second, Moore argues that the district court improperly entered a conviction and sentence for a class C misdemeanor for Failure to Stay in One Lane because the legislature reclassified that offense to an infraction in between the time of Moore's offense and his sentencing. "[W]hether defendants are entitled to a lesser sentence when the legislature reduces the penalty for the crime charged after conviction but before sentencing" is a "question[] of law," which we review for correctness. *State v. Yates*, 918 P.2d 136, 138 (Utah Ct. App. 1996).

### ANALYSIS

#### I. Admission of the Toxicology Report

¶10 To authenticate a proffered piece of evidence, rule 901(a) of the Utah Rules of Evidence states that "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Therefore, "before a physical object or substance connected with the commission of a crime is admissible in evidence there must be a showing that the proposed exhibit is in substantially the same condition as at the

time of the crime." *State v. Torres*, 2003 UT App 114, ¶ 8, 69 P.3d 314 (cleaned up). "If after consideration of the circumstances surrounding preservation, custody, and the likelihood of tampering with the substance the trial court is satisfied that the article or substance has not been changed or altered, the trial court may permit its introduction into evidence." *Id.* (cleaned up). After the district court makes the threshold finding that there is a "reasonable probability the proffered evidence has not been changed in any important respect," *State v. Griffin*, 2016 UT 33, ¶ 26, 384 P.3d 186 (cleaned up), then "it is up to the jury to weigh the evidence based on its assessment of the showing of chain of custody," *Torres*, 2003 UT App 114, ¶ 8 (cleaned up).

¶11    Moore argues that the State failed to authenticate the blood sample evidence. He contends that the State's failure to present direct evidence of how the crime lab handled the blood samples before testing broke the chain of custody and rendered the toxicology report inadmissible. In particular, because blood sample evidence can degrade unless refrigerated, Moore argues that the State failed to demonstrate that the tested blood samples were "in substantially the same condition" as when they were drawn from Moore because the State produced no evidence as to when the samples were put into the refrigerator at the crime lab. We disagree.

¶12    The State offered sufficient circumstantial evidence to establish that the blood samples were handled properly at the crime lab. Moore's blood samples were uniquely labeled and identifiable from the time they were collected until testing. The State produced a receipt demonstrating that Moore's blood samples were delivered to the crime lab. The toxicologist testified that it was the practice of crime lab technicians to place new blood samples in the evidence refrigerator shortly after receiving the samples. The toxicologist further testified that she did, in fact, find and retrieve Moore's samples from the evidence refrigerator. This evidence, taken together, was sufficient for the district court to conclude that the blood sample evidence was

authenticated. *See State v. Wynia*, 754 P.2d 667, 671 (Utah Ct. App. 1988) ("The party proffering the evidence is not required to eliminate every conceivable possibility that the evidence may have been altered.").

¶13   Moreover, "[o]nce the evidence is in the hands of the state, it is generally presumed that the exhibits were handled with regularity, absent an affirmative showing of bad faith or actual tampering." *Id.*; *see also Griffin*, 2016 UT 33, ¶ 26 ("Utah courts have held that evidence with a sufficient chain of custody may be admitted when no evidence suggesting tampering has been presented."). Despite this presumption, Moore offered no evidence that the crime lab deviated from its standard practice concerning blood sample refrigeration or that the blood samples were otherwise tampered with or handled improperly.

¶14   Instead, Moore relies on authority from other jurisdictions to argue that blood sample evidence is inadmissible when the prosecution fails to identify each and every "link" in the chain of custody. *See, e.g.*, *Creel v. State*, 618 So. 2d 132, 134 (Ala. Crim. App. 1992) ("The chain of custody is composed of 'links.' A 'link' is anyone who handled the item. The State must identify each link from the time the item was seized." (cleaned up)). However, in Utah, "showing a reliable chain of custody is just one way to authenticate evidence" because "evidence is generally admissible if the trial court is satisfied that the evidence has not been changed or altered." *State v. Smith*, 2012 UT App 370, ¶ 15, 293 P.3d 1148 (cleaned up). Therefore, Moore is mistaken that the failure to identify the crime lab technician or present direct evidence of how the blood was handled at the crime lab is fatal to the toxicology report's admissibility.[2]

---

2.   The sister-jurisdiction cases Moore cites are also distinguishable inasmuch as they all deal with significant gaps in the chain of custody *before* the evidence was received by the

(continued…)

¶15    In any event, even if the blood sample evidence had not been promptly refrigerated, the record in this case still supports the district court's determination that the samples tested were in substantially the same condition as when Moore's blood was drawn. *See id.* ("Before a physical object or substance connected with the commission of a crime is admissible in evidence there must be a showing that the proposed exhibit is in substantially the same condition as at the time of the crime." (cleaned up)). Moore's blood was kept in special vials containing preservatives to prevent blood degradation and coagulation. The toxicologist testified that the preservatives would likely prevent significant degradation even if the blood samples were left unrefrigerated

---

(…continued)

testing laboratory. *See, e.g., Creel v. State*, 618 So. 2d 132, 134 (Ala. Crim. App. 1992) (reversing a conviction where a four-day gap was unaccounted for before the crime lab received the evidence and where the individuals in charge of maintaining the evidence in those four days could not be identified); *Suttle v. State*, 565 So. 2d 1197, 1198–1200 (Ala. Crim. App. 1990) (reversing a conviction where "absolutely no effort was made by the prosecution to account for the whereabouts of the [blood] samples" for four days before they were received by the toxicologist); *Ellis v. Unemployment Comp. Bd. of Review*, 749 A.2d 1028, 1029–32 (Pa. Commw. Ct. 2000) (concluding that without testimony regarding how urine samples were obtained or how they were transported to the testing laboratory, the employee was entitled to unemployment benefits). In Moore's case, however, the only alleged gap in the chain of custody occurred *after* the crime lab received the blood samples. The courts of at least one other state have determined that such a situation does not create a missing link because "a crime lab and all its branch offices and employees are considered as a single link in the chain of custody." *Maldonado v. State*, 603 S.E.2d 58, 60 (Ga. Ct. App. 2004); *see also Herrera v. State*, 702 S.E.2d 854, 857 (Ga. 2010).

"for several days." And the toxicologist's unrebutted testimony indicated that, even if the blood samples did degrade, the degradation would likely lower the blood samples' alcohol content, thus working in Moore's favor.[3] As a result, even if the crime lab had failed to refrigerate Moore's blood samples in a timely manner, it is reasonably probable that the evidence was not changed in any important respect. *See Griffin*, 2016 UT 33, ¶ 26.

¶16    Therefore, we conclude that the district court acted well within its discretion in admitting the toxicology report.

## II. Sentencing for Failure to Stay in One Lane

¶17    At the time of Moore's offense in 2014, Failure to Stay in One Lane was a class C misdemeanor. Utah Code Ann. § 41-6a-710(1) (LexisNexis 2014). However, in 2015, prior to Moore's sentencing, the legislature amended the law to reclassify that offense as an infraction. *Id.* § 41-61-719(1) (Supp. 2015). Despite the reclassification, Moore's conviction for Failure to

---

3. On appeal, Moore cites several academic articles to suggest that, absent refrigeration, the alcohol content of blood samples may increase due to blood fermentation. *See generally* Carrie R. Valentine & Jimmie L. Valentine, *Collection and Preservation of Forensic Blood Specimens: The Fermentation Defense*, *in* Understanding DUI Scientific Evidence 235, 235-71 (Aspatore 2013), 2013 WL 6140722, at \*\*1–21; Joyce Chang & S. Elliot Kollman, *The Effect of Temperature on the Formation of Ethanol by Candida Albicans in Blood*, 34 J. Forensic Sci. 105, 105–09 (1989). However, these articles are not part of the record as they were never presented to the district court. "An appellate court's review is limited to the evidence contained in the record on appeal. Therefore, we will not consider evidence which is not part of the record." *State v. Pliego*, 1999 UT 8, ¶ 7, 974 P.2d 279 (cleaned up).

Stay in One Lane was entered as a class C misdemeanor. Moore argues, and the State agrees, that his conviction should be entered as an infraction because "[d]efendants are entitled to the benefit of the lesser penalty afforded by an amended statute made effective prior to their sentencing." *State v. Yates*, 918 P.2d 136, 138 (Utah Ct. App. 1996).

¶18    We agree with the parties and conclude that the district court erred by sentencing Moore for a class C misdemeanor rather than an infraction for Failure to Stay in One Lane.

CONCLUSION

¶19    The State made a sufficient showing that the tested blood samples were in substantially the same condition as when they were collected from Moore. Therefore, the district court did not abuse its discretion by admitting the toxicology report despite the lack of direct evidence as to how the crime lab handled the blood samples between receipt and testing. Accordingly, we affirm Moore's DUI conviction.

¶20    With respect to Moore's conviction for Failure to Stay in One Lane, we vacate and remand to the district court for the limited purpose of entering the conviction as an infraction and resentencing Moore at the correct level of offense.

¶21    Affirmed in part, vacated in part, and remanded.

———————