2020 UT App 95

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JORDAN VINCENT STEFFEN,
Appellant.

Opinion
No. 20180467-CA
Filed June 18, 2020

Fourth District Court, Provo Department
The Honorable Derek P. Pullan
No. 151402886

Douglas J. Thompson and Bryson R. King, Attorneys
for Appellant

Sean D. Reyes and John J. Nielsen, Attorneys
for Appellee

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and RYAN M. HARRIS concurred.

HAGEN, Judge:

¶1   A jury convicted Jordan Vincent Steffen on two counts of child endangerment, two counts of lewdness involving a child, and one count of aggravated child sexual abuse. Steffen challenges his convictions on multiple grounds, arguing that the district court (1) abused its discretion by excluding evidence that the alleged victim had previously been sexually abused, (2) made two erroneous discovery rulings under rule 16 of the Utah Rules of Criminal Procedure, and (3) abused its discretion by denying his request for mistrial. We affirm.

BACKGROUND[1]

¶2 In October 2015, the State charged Steffen with two counts of lewdness involving a child, eight counts of aggravated sexual abuse of a child, one count of sodomy on a child, two counts of endangerment of a child, one count of possession of drug paraphernalia, one count of rape of a child, and one count of tampering with a witness. The primary basis for these charges centered on sexually abusive acts that the State alleged Steffen committed against his girlfriend's daughter, A.Z., when she was between eleven and twelve years old.

¶3 At a preliminary hearing, A.Z. testified about the sexual abuse Steffen committed but did not mention abuse by any other individual. About a month after the hearing, Steffen moved to admit evidence, under rule 412 of the Utah Rules of Evidence, that A.Z.'s grandfather had previously sexually abused her (the prior abuse evidence). According to Steffen, the prior abuse evidence was relevant to "rebut [A.Z.'s] 'sexual innocence inference' by establishing [her] degree of sexual knowledge at the time the allegations were made."[2] After holding an

---

1. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly." *State v. Moore*, 2019 UT App 159, n.1, 451 P.3d 298 (cleaned up).

2. "The sexual innocence inference refers to the thought process a jury follows when it hears a young child testify about sexual acts and matters that reveal an understanding of such acts beyond the capacity likely at his or her age. A jury is likely to assume that because the child is so young, he or she must be innocent of sexual matters. Shocked by the child's display on the witness stand, the jury may then infer that the child could have acquired such knowledge only if the charged offense of child molestation is true." Christopher B. Reid, Note, *The Sexual Innocence Inference Theory as a Basis for the Admissibility of a Child*

(continued…)

evidentiary hearing at which A.Z. described her grandfather's abusive acts, the district court ruled that the prior abuse evidence was inadmissible under rule 412. Although the court noted that "evidence offered to rebut" the sexual innocence inference was relevant, it concluded that the prior abuse evidence should be excluded because the "acts committed by [the grandfather] against the alleged victim . . . are so different from those alleged in this case that they have minimal probative value in rebutting the sexual innocence inference."

¶4 Following its ruling on the prior abuse evidence, the district court scheduled Steffen's trial. A few weeks before trial, however, Steffen moved for a continuance due to late evidentiary disclosures by the State. Ultimately, the court determined that the late disclosures prejudiced Steffen's "ability to prepare an adequate defense by the time scheduled for trial" and granted a three-month continuance.

¶5 On the second day of the rescheduled trial, during opening arguments, the State revealed that it intended to call A.Z.'s mother (the mother) as a witness and that she would testify that she had coerced A.Z. into not disclosing an act of lewdness by Steffen to law enforcement. Despite an ongoing obligation to disclose inculpatory evidence, the State had not notified the defense about that fact. Upon objection from the defense, the district court ordered "the State to disclose [to the defense] all investigator notes or reports regarding statements of A.Z. and [the] mother about the disclosure of [the lewd act] to [the mother] and directions by [the] mother that A.Z. not make disclosures" to law enforcement. The next day, the district court declared a mistrial as a result of the State's nondisclosure.

---

(…continued)
*Molestation Victim's Prior Sexual Conduct*, 91 Mich. L. Rev. 827, 829 (1993).

¶6 In accordance with the district court's earlier order, the State emailed the defense "the factual portion of [its paralegal's] notes" taken during interviews with A.Z. and the mother.[3] The next day, Steffen moved to compel the State to disclose all its witness interview notes, arguing that allowing the State to have "unfettered access" to witnesses' factual statements without disclosing the "notes on th[ose] factual assertions" to the defense violated his right to due process. The court denied Steffen's motion to compel, reasoning that the complete interview notes contained the prosecution's core opinion work product and that with disclosure of "the paralegal's notes, [Steffen could] fairly and effectively cross examine and confront [the mother] at trial."

¶7 Shortly after the district court denied Steffen's motion to compel, the State filed a motion for specific discovery requesting the "reports, notes, and recordings of any interviews or investigations by the defense investigator(s), either of [Steffen's] witnesses, or the State's witnesses." After the time to oppose the motion expired, the State filed a motion to compel discovery. Steffen opposed the motion to compel, arguing that "the attorney work product privilege" protected the items sought by the State from disclosure. The court found that the State had "shown good cause for the disclosure" of the requested information and entered the following order:

> During cross examination of any State witness, Defendant shall disclose to the prosecutor any report, note, or recording containing a prior

---

3. In the email, the State suggested that, "[b]ased on the court's suggestion," it had "decided" to disclose the paralegal's notes. But the district court did not "suggest" that the interview notes, excepting work product, be disclosed—it unequivocally ordered disclosure. Accordingly, we view the disclosure of the paralegal's notes as being responsive to that order and not as a voluntary disclosure by the State.

> inconsistent statement made by that witness to the defense investigator.
>
> . . . .
>
> For each . . . witness [the defense decides to call], Defendant shall disclose to the State all portions of the investigator's reports, notes, and recordings which contain prior statements of that . . . witness. This disclosure shall be made 10 days prior to trial.

¶8 Before the start of the new trial, Steffen again moved to admit the prior abuse evidence, but this time offered a different reason. In that motion, Steffen argued that the prior abuse evidence was necessary to rebut one of the State's expert witnesses who would testify that A.Z. began cutting herself after Steffen began abusing her. Steffen intended to rebut the expert's testimony by demonstrating that A.Z. began cutting herself in response to the grandfather's abuse and that her self-harm was not attributable to Steffen. In response, however, the State said that it would "not be asserting, either directly or indirectly, that the physical evidence of A.Z.'s cutting injuries 'originated with the accused.'" After noting the State's decision not to introduce any evidence that A.Z. cut herself, the district court rejected Steffen's alternative argument that the prior abuse evidence was admissible under rule 412.

¶9 Steffen's trial began shortly thereafter. During the State's direct examination of A.Z., the State moved to introduce a portion of a law enforcement interview with A.Z. that, according to the State, had been edited to remove any mention of her cutting or self-harm. The district court admitted the interview and allowed it to be played to the jury. Toward the end of the recording, A.Z. told the interviewer that she went to the bathroom after an incident in which Steffen abused her. The interviewer then asked, "What happened after you went to the bathroom?" to which A.Z. responded, "I cut."

¶10    In a later discussion with the district court and outside the presence of the jury, the State apologized for its error in allowing the "I cut" statement (the cutting statement) to be played for the jury. The State averred that it was an innocent mistake caused by a problem with its editing software, and Steffen accepted that characterization of the incident. Nevertheless, Steffen moved for dismissal due to "cumulative due process violations" or, in the alternative, a mistrial. Steffen's counsel reminded the court that the State's failure to make timely disclosures had previously resulted in a continuance of the first trial and later in a mistrial. Counsel then discussed how playing the cutting statement to the jury prejudiced Steffen in multiple ways and "affect[ed] his ability to have a fair trial." The court declined to either dismiss the case or declare a mistrial. However, the court did rule that Steffen could admit the previously excluded prior abuse evidence to rebut the "causal connection" that A.Z. "cut herself because of [Steffen's] sexual assault." But despite finally being authorized by the court to introduce the prior abuse evidence, Steffen did not do so, asserting that the changed ruling came too late to allow Steffen to present the necessary witnesses and evidence.

¶11    At the conclusion of trial, the jury acquitted Steffen on ten of the charged counts, but found him guilty on five: two counts of lewdness involving a child, two counts of child endangerment, and one count of aggravated sexual abuse of a child. [4] Steffen now appeals.

ISSUES AND STANDARDS OF REVIEW

¶12    Steffen raises a number of issues on appeal. First, he contends that the district court exceeded its discretion by

---

4. Earlier in the trial, the State had also voluntarily dismissed one count of aggravated sexual abuse of a child.

excluding the prior abuse evidence. "We afford district courts a great deal of discretion in determining whether to admit or exclude evidence and will not overturn an evidentiary ruling absent an abuse of discretion." *State v. Cuttler*, 2015 UT 95, ¶ 12, 367 P.3d 981 (cleaned up). "But whether the district court applied the proper legal standard in assessing the admissibility of that evidence is a question of law that we review for correctness." *Id.* (cleaned up).

¶13 Next, Steffen contends that the district court issued two erroneous discovery rulings under rule 16 of the Utah Rules of Criminal Procedure. "While a [district] court is generally allowed broad discretion in granting or denying discovery, the proper interpretation of a rule of procedure is a question of law, and we review the [district] court's decision for correctness." *State v. Spry*, 2001 UT App 75, ¶ 8, 21 P.3d 675 (cleaned up).

¶14 Lastly, Steffen contends that the district court erroneously denied his motion for mistrial. A district court's decision to reject a motion for mistrial is reviewed for abuse of discretion. *State v. Harris*, 2004 UT 103, ¶ 21, 104 P.3d 1250.

ANALYSIS

I. Exclusion of the Prior Abuse Evidence

¶15 Steffen argues that the district court abused its discretion by excluding the prior abuse evidence under rule 412 of the Utah Rules of Evidence. Rule 412 applies in "proceeding[s] involving alleged sexual misconduct" and generally bars evidence "that a victim engaged in other sexual behavior" or that is "offered to prove a victim's sexual predisposition." Utah R. Evid. 412(a). The rule also prohibits evidence concerning a victim's prior history of being sexually abused, *see State v. Tarrats*, 2005 UT 50, ¶ 28, 122 P.3d 581 (holding that "prior truthful rape claims are inadmissible" under rule 412), and it

was on this basis that the district court excluded the contested evidence in Steffen's case.

¶16 Steffen notes that there are exceptions to rule 412, under which a court may admit evidence of a victim's sexual history if it is "otherwise admissible" and falls within one of the following categories: (1) "evidence of specific instances of a victim's sexual behavior, if offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence;" (2) "evidence of specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent or if offered by the prosecutor;" or (3) "evidence whose exclusion would violate the defendant's constitutional rights." Utah R. Evid. 412(b). Although Steffen cites these exceptions on appeal, he has not identified the exception that allegedly applies. Because the first two exceptions are inapplicable to the facts of this case, we assume that Steffen is arguing that exclusion of the prior abuse evidence violated his constitutional rights—the third exception. We further assume, based on Steffen's arguments about his "need for this evidence" and how its exclusion "unfairly prejudice[d] the defense," that he contends that the exclusion violated his Sixth Amendment right to present a defense. *See State v. Thornton*, 2017 UT 9, ¶ 74, 391 P.3d 1016 (explaining that multiple rights, including the right to confrontation, are contained within the "right to present a defense" under the Sixth Amendment (cleaned up)).

¶17 As our supreme court explained in *Thornton*, the "right to present a defense is far from absolute." *Id.* ¶ 76. The exclusion of evidence under rule 412 violates that right only when the exclusion is "arbitrary or disproportionate to the purposes" that rule 412 was designed to serve. *Id.* (cleaned up). That standard is met only where the application of rule 412 "significantly undermined fundamental elements of [a] defendant's defense." *Id.* ¶ 77 (cleaned up). Importantly, "it is not enough to show that [rule 412] excludes favorable evidence." *Id.* (cleaned up). Instead,

a defendant "must demonstrate a weighty interest that is significantly undermined" by rule 412's exclusion of evidence. *Id.* (cleaned up). Such a showing requires, "at a minimum, proof that the evidence in question is essential to the presentation of a defense." *Id.* ¶ 78. Steffen has not met this "high bar." *See id.* ¶ 77.[5]

---

5. Steffen faults the district court for failing to undertake the two-part, case-by-case balancing test previously adopted by this court. *See State v. Marks*, 2011 UT App 262, ¶ 22, 262 P.3d 13. Under that approach, this court weighed "the interests of the defendant against those of the State under the facts and circumstances of the particular case," by assessing "both the importance of the [prior abuse] evidence to an issue critical to the defense and the extent to which exclusion of the evidence will further the purposes of [rule 412]." *Id.* ¶ 23. This approach was gleaned from *Michigan v. Lucas*, 500 U.S. 145 (1991), in which the United States Supreme Court stated that rules restricting "a criminal defendant's rights to confront adverse witnesses and to present evidence may not be arbitrary or disproportionate to the purposes they are designed to serve." *Id.* at 151 (cleaned up). However, the Supreme Court has since explained that *Lucas* "did not even suggest, much less hold, that it is unconstitutional to enforce such a rule unless a case-by-case balancing of interests weighs in favor of enforcement." *Nevada v. Jackson*, 569 U.S. 505, 511 (2013). By adopting rule 412, the Utah Supreme Court has already made a policy determination that the interests in excluding evidence of a victim's sexual history outweigh the defendant's interest in presenting such evidence except in limited circumstances. Rather than attempting to rebalance those interests on a case-by-case basis—an approach that has never been endorsed by the Utah Supreme Court—we follow our supreme court's lead in *State v. Thornton*, 2017 UT 9, 391 P.3d 1016, and focus solely on whether the defendant has established an exception to rule 412.

¶18 Steffen asserts that the prior abuse evidence was relevant to rebut the sexual innocence inference.[6] In other words, he argues that A.Z.'s experience with prior sexual abuse was "admissible to rebut the jury's likely assumption that [she] would not have such sexual knowledge but for the charged abuse." *See State v. Marks*, 2011 UT App 262, ¶ 33, 262 P.3d 13. The district court agreed with Steffen that the prior abuse evidence was relevant in that regard due to A.Z.'s young age. But just because the prior abuse evidence may have been relevant to rebutting the sexual innocence inference does not mean that it was "essential to the presentation of a defense." *See Thornton*, 2017 UT 9, ¶ 78.

¶19 The district court concluded that, although the prior abuse evidence was relevant to rebut the sexual innocence inference, it lacked significant probative value given the facts of this case. The prior abuse evidence would have shown that A.Z.'s grandfather committed multiple abusive acts against her, including touching her breasts and buttocks and shaving her legs while she showered. And Steffen correctly notes that he was

---

6. Steffen also argues that the prior abuse evidence was relevant to rebut any inference that A.Z. began cutting herself in response to his sexually abusive behavior—an inference he contends was created when the State accidentally played the cutting statement to the jury. After that incident, however, the district court ruled that Steffen could admit the prior abuse evidence for the purpose of rebutting any such inference—although he ultimately declined to do so. Steffen has not pointed us toward any authority that would allow a defendant to challenge a district court's decision to exclude evidence where the court later reversed itself and admitted the evidence (albeit later than the defendant might have preferred). Accordingly, that specific issue is moot. *See Saunders v. Sharp*, 818 P.2d 574, 577 (Utah Ct. App. 1991) ("Generally, when substantive issues are resolved prior to appeal, the appeal is rendered moot.").

accused of, among other things, touching A.Z.'s breasts and buttocks and inappropriately touching her while she showered. But, although a full recounting of the allegations against Steffen is not necessary here, Steffen was also accused of much more egregious conduct, including digital penetration, attempted fellatio, masturbation, and vaginal rape.

¶20    With these facts in mind, we consider whether admitting the prior abuse evidence to rebut the sexual innocence inference was essential to Steffen's defense. We conclude that it was not because (1) the State did not rely on the sexual innocence inference at trial; (2) even if the jury made such an inference, Steffen had other evidence at his disposal to rebut it; and (3) the probative value of the prior abuse evidence was limited due to A.Z.'s age and the dissimilarity between those acts and the charged conduct.

¶21    First, the source of A.Z.'s sexual knowledge was not a central issue at trial. Indeed, Steffen has not identified a single instance at trial in which the State relied on the sexual innocence inference. *See State v. Rhodes*, 2019 UT App 143, ¶ 25 n.2, 450 P.3d 1123 (rejecting argument regarding the sexual innocence inference where the source of the victim's sexual knowledge was never placed in issue at trial); *State v. Clark*, 2009 UT App 252, ¶ 17, 219 P.3d 631 (concluding that the exclusion of rule 412 evidence did not violate the defendant's Sixth Amendment rights where "the prosecutor did not argue that [the victims] lacked the sexual knowledge to fabricate the charges"); *see also Thornton*, 2017 UT 9, ¶ 25 (noting that the prosecution did not argue that a child of the victim's age "could not have described sex in the way she did unless she had been raped"). Because the State did not rely on the sexual innocence inference as evidence of guilt, the need to rebut that inference was less critical to Steffen's defense.

¶22    Second, to the extent that the jury may have drawn such an inference on its own, Steffen was able to rely on other

evidence to explain how A.Z. could have acquired her sexual knowledge. In closing, Steffen argued as follows:

> [A.Z.] knew that her grandfather . . . , who had abused her cousin, was no longer around. [A.Z.] had crude talk with [another cousin and two other individuals]. [A.Z.] was spending lots of time on social media, particularly with Instagram. This is an 11 or 12-year-old that has access to a phone and the internet, and all kinds of things. I think it's safe to say that she probably knew a lot more about the world at 11 years old than we ever did.

Despite the exclusion of the prior abuse evidence, Steffen was able to present a plausible argument to rebut any inference that A.Z. would have been unable to fabricate the allegations unless Steffen had committed the charged acts. *Cf. Thornton*, 2017 UT 9, ¶¶ 80–83 (affirming the district court's decision to exclude rule 412 evidence—on the basis that the defendant had "several other means" to rebut the sexual innocence inference—because there was no "foundation in the record for comparison of the rule 412 evidence with the alternative evidence cited by the district court" (cleaned up)).

¶23   Third, even if the sexual innocence inference had been a central issue at trial, the prior abuse evidence was not essential to Steffen's defense because it did little to rebut such an inference. "In considering the probative value of the evidence of a child victim's [prior history of being abused] for purposes of rebutting the sexual innocence inference, [district] courts first consider the age of the child complainant at the time the child describes the sexual assault." *State v. Ashby*, 2015 UT App 169, ¶ 34, 357 P.3d 554 (cleaned up). Evidence offered to rebut the sexual innocence inference is most probative when it would demonstrate how a child victim obtained sexual knowledge beyond his or her years. *See Marks*, 2011 UT App 262, ¶¶ 37–38 (explaining that "the probative value of evidence of a child's

alternative source of sexual knowledge will be inversely proportional to the child's age" and that "there is less need to explain the sexual knowledge of a teenage boy than that of a younger child" (cleaned up)). District courts also consider the probative value of a child victim's prior history of being sexually abused "with respect to his [or her] ability to fabricate the current allegations by analyzing whether the prior [abuse] is similar to that involved in the allegations against the defendant." *Ashby*, 2015 UT App 169, ¶ 35 (cleaned up). Given the nature of the allegations against Steffen and A.Z.'s age, the prior abuse evidence did not provide an alternative source for A.Z.'s knowledge of the abuse she described.

¶24 Steffen argues that the prior abuse evidence was extremely probative of A.Z.'s ability to fabricate the charges against him because the allegations of abuse A.Z. made against her grandfather "bore striking similarities" to the allegations against Steffen. Although both sets of allegations included conduct such as touching A.Z.'s breasts and buttocks and touching her while she showered, that factually overlapping portion formed only a fraction of the accusations against Steffen.[7] Steffen was accused of far more lurid acts of sexual abuse, and it is unclear how evidence that A.Z. had experienced comparatively less egregious abuse in the past would have

---

7. We note that Steffen was ultimately acquitted of many of the more heinous allegations made against him. But the district court is required to rule on admissibility at the time of trial without knowing whether the defendant will be convicted of any of the charges. In deciding whether such evidence is admissible, the district court must necessarily consider "whether the prior [abuse] is similar to that involved in the allegations against the defendant." *See State v. Ashby*, 2015 UT App 169, ¶ 35, 357 P.3d 554 (cleaned up). On appeal, we review whether the district court acted within its discretion at the time it made the evidentiary ruling.

affected her ability to fabricate allegations involving significantly more heinous conduct. *See id.* ¶¶ 36–37 (determining that the probative value of a victim's prior sexual experiences was low because his past "sexual behavior with other children involved oral stimulation with other males" rather than the "breast stimulation or digital vaginal and anal penetration alleged" in that case (cleaned up)); *Marks*, 2011 UT App 262, ¶ 41 ("[T]he fact that [the victim] had simulated sexual intercourse with [his sister] does not explain his ability to describe fellatio and ejaculation."). Certainly, "a limited sexual experience involving inappropriate touching of [her] buttocks does not explain [A.Z.'s] ability to describe sexual intercourse[,] fellatio," or the other sexual acts A.Z. accused Steffen of committing. *See Marks*, 2011 UT App 262, ¶ 40. Accordingly, the prior abuse evidence had little probative value due to the dissimilarity of much of the conduct alleged against Steffen and A.Z.'s grandfather.

¶25   In addition, the prior abuse evidence did not explain how A.Z. obtained sexual knowledge beyond her years. A.Z. was eleven years old when Steffen allegedly began abusing her and was twelve years old at the time she reported the abuse to the police. She accused Steffen of, among other things, graphic sexual acts that would be beyond the knowledge of a typical eleven- or twelve-year-old child. *See State v. Budis*, 593 A.2d 784, 792 (N.J. 1991) ("[W]e doubt that a jury would expect a nine-year-old girl . . . to know the intricacies of oral and vaginal sex."). But the prior abuse evidence would not have established an alternative source for A.Z.'s knowledge of such acts. Instead, the prior abuse evidence could demonstrate only how A.Z. might have obtained sexual knowledge that would enable her to fabricate allegations that an adult touched her private parts. Such allegations would not require sexual knowledge beyond A.Z.'s years. *See Commonwealth v. Rathburn*, 532 N.E.2d 691, 708 (Mass. App. Ct. 1988) (explaining that a thirteen-year-old victim did not demonstrate "extraordinary [sexual] knowledge" by using terms such as "penis," "butt," "hard," or "rubbing" (cleaned up)). Because no advanced sexual knowledge was

required for A.Z. to make the allegations against Steffen that were similar in kind to the grandfather's abuse, the probative value of the prior abuse evidence based on A.Z.'s age was minimal.

¶26 Given the relatively low probative value of the prior abuse evidence, the State's lack of reliance on the sexual innocence inference, and his ability to rebut such an inference with other evidence, Steffen has not established that the rule 412 evidence was essential to his defense. Therefore, the constitutional exception to rule 412 does not apply, and the district court acted within its discretion in excluding the prior abuse evidence.

## II. Discovery Rulings

¶27 Steffen next contends that the district court issued two erroneous discovery rulings under rule 16 of the Utah Rules of Criminal Procedure. First, he argues that, because the State waived its work-product privilege to its witness-interview notes, the court erred by denying his motion to compel full disclosure of those notes. Second, he argues that the court erred by requiring the defense to turn over privileged work product when it granted the State's motion to compel. We address each argument in turn.

### A. Steffen's Motion to Compel

¶28 In relevant part, rule 16 of the Utah Rules of Criminal Procedure requires prosecutors, upon request of the defense, to disclose several enumerated items and "any other item of evidence which the court determines on good cause shown should be made available to the defendant in order for the defendant to adequately prepare a defense." Utah R. Crim. P. 16(a). However, "the court may at any time order that discovery or inspection be denied, restricted, or deferred," if the party resisting discovery makes a sufficient showing. *Id.* R. 16(f). One

basis for such a showing is protection of a prosecutor's work product. *See State v. Melancon*, 2014 UT App 260, ¶ 14, 339 P.3d 151 ("The attorney-work-product doctrine generally protects the work of prosecutors from the discovery process.").

¶29　During Steffen's first trial, the State revealed that the mother would testify that she had coerced A.Z. not to disclose an act of lewdness by Steffen to law enforcement interviewers—an inculpatory fact that was previously unknown to the defense. Before declaring a mistrial, the district court found that the State should have disclosed that information because it fell "squarely" within the defense's prior discovery request with which the State had voluntarily complied. *See State v. Knight*, 734 P.2d 913, 917 (Utah 1987) ("[W]hen the prosecution agrees to produce any of the material requested, it must continue to disclose such material on an ongoing basis to the defense."). The court then ordered the State to "disclose all investigator notes or reports regarding statements of A.Z. and [the] mother about the disclosure of [the lewdness incident] to [the mother] and directions by [the] mother that A.Z. not make disclosures to [law enforcement] interviewers." However, the court indicated that it would not "order the disclosure of [the prosecutor's] notes because they would be protected by the work product doctrine."

¶30　In accordance with this order, the State sent the defense an email containing the factual portions of its paralegal's notes taken during the mother's interview.[8] The email noted that the State was waiving any work-product privilege with respect to the portion of notes disclosed. Steffen argues that by doing so, the State waived its work-product privilege with respect to the entirety of the notes taken during the mother's interview and incurred a continuing obligation to continue to disclose all notes

---

8. Although Steffen's motion sought the notes from all the State's witness interviews, the focus of his motion was on the notes taken during interviews with the mother.

taken by the prosecution team during witness interviews. *See id.* at 916–17. We disagree.

¶31 By sending an email containing the factual portion of the paralegal's notes taken during the mother's interview, the State was merely complying with the district court's order, which explicitly exempted disclosure of the State's privileged work product. Complying with a court order by disclosing factual information provided by a witness does not constitute a waiver of the privilege regarding core opinion work product. *See Southern Utah Wilderness All. v. Automated Geographic Reference Center*, 2008 UT 88, ¶ 24, 200 P.3d 643 (distinguishing ordinary factual work product from "core or opinion work product that encompasses the mental impressions, conclusions, opinion, or legal theories of an attorney or other representative of a party concerning the litigation" and explaining that the latter "is generally afforded near absolute protection from discovery" (cleaned up)); *see also In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1302 (Fed. Cir. 2006) ("Work product waiver is not a broad waiver of all work product related to the same subject matter like the attorney-client privilege. Instead work-product waiver only extends to factual or non-opinion work product concerning the same subject matter as the disclosed work product." (cleaned up)). Nor did the State's compliance with the court's order cause it to incur any new discovery obligations because its disclosure of the paralegal's notes was involuntary. *See Knight*, 734 P.2d at 917. Therefore, the court did not err by denying Steffen's motion to compel the production of all the State's witness interview notes.

B.     The State's Motion to Compel

¶32 Steffen also argues that the district court erred in granting the State's motion to compel because its order granted the State access to the defense's core opinion work product. Rule 16 of the Utah Rules of Criminal Procedure provides in relevant part that "[e]xcept as otherwise provided or as privileged, the defense

shall disclose to the prosecutor . . . any other item of evidence which the court determines on good cause shown should be made available to the prosecutor in order for the prosecutor to adequately prepare the case." Utah R. Crim. P. 16(c). To show good cause, rule 16 requires only that the prosecution "establish the materiality of the requested records to the case." *State v. Spry*, 2001 UT App 75, ¶¶ 21, 23, 21 P.3d 675 (cleaned up).[9]

¶33   In this case, the district court found that the State had shown good cause for Steffen to disclose "investigator reports, notes, and recordings" from witness interviews with both State and defense witnesses. The court found that the notes from interviews with prosecution witnesses contained protected work product, but determined that the privilege would be waived if Steffen intended to use those notes to impeach the witnesses on cross-examination. The court similarly found that the notes from

---

9. As discussed below, the district court found that the State had shown good cause for the defense to disclose "investigator reports, notes, and recordings" from witness interviews with both State and defense witnesses. But because those documents contained protected work product, they were entitled to more protection than the "good cause" requirement found in rule 16 of the Utah Rules of Criminal Procedure. Protected work product is discoverable "only upon a showing that the party seeking discovery has substantial need of the materials and that the party is unable without undue hardship to obtain the substantial equivalent materials by other means." Utah R. Civ. P. 26(b)(5); *see also id.* R. 81(e) ("These rules of procedure shall also govern in any aspect of criminal proceedings where there is no other applicable statute or rule, provided, that any rule so applied does not conflict with any statutory or constitutional requirement."). We need not address this issue here, however, because the court determined that Steffen waived work-product privilege and he does not directly challenge that determination on appeal.

interviews with defense witnesses contained protected work product, but determined that Steffen waived the privilege by calling those witnesses and placing their credibility at issue. Having made those determinations, the court ordered that during cross-examination of any prosecution witness, Steffen was to disclose any notes "containing a prior inconsistent statement made by that witness to the defense investigator." As to the notes from the interviews with defense witnesses, the district court ordered Steffen to disclose "all portions" of the notes "which contain prior statements" by any witnesses that the defense chose to call.

¶34 On appeal, Steffen does not directly challenge the district court's determination that he waived the work-product privilege. Rather, he appears to challenge the breadth of the court's order, arguing that "if any waiver exists, it is only relevant to any recorded *statements* made by the State's witnesses, not the *notes* and *recordings* of the individual conducting the investigation or interview." (Emphasis in original.) Steffen argues that the court's order allowed "the mental impressions, opinions, and observations" of the defense to be "scoured by prosecutors in search of statements affecting . . . witnesses' credibility." We agree that certain language in the court's order permits such a broad reading.

¶35 With respect to the notes from interviews with defense witnesses, the district court ordered Steffen to disclose only those "portions" that contained prior witness statements. That part of the court's order required the defense to disclose only factual work product rather than core opinion work product.

¶36 The court's order relating to the notes from interviews with prosecution witnesses, however, contained no such limitation. Rather, that order required that, "[d]uring cross examination of any State witness, [Steffen] shall disclose to the prosecutor any report, note, or recording *containing* a prior inconsistent statement made by that witness to the defense

investigator." (Emphasis added.) Work product waivers must be narrowly construed to apply to "factual or non-opinion work product." *In re EchoStar Commc'ns Corp.*, 448 F.3d at 1302 (cleaned up); *see also Southern Utah Wilderness All.*, 2008 UT 88, ¶ 24. To the extent that the order required disclosure of all notes taken by the defense team during interviews with prosecution witnesses, including those portions that contained core opinion work product, it exceeded the court's discretion.

¶37    But even assuming the order was overbroad, Steffen has not demonstrated harmful error. *See* Utah R. Crim. P. 30(a) ("Any error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded."). Pursuant to the district court's order, Steffen was required to turn over interview notes pertaining to prosecution witnesses only if he used those notes to impeach a witness during cross-examination. Because Steffen elected not to use those notes during cross-examination, the notes were never disclosed. Nonetheless, Steffen argues that the court's order was not harmless because it forced him to choose between (1) using material collected by his investigator and disclosing core opinion work product to the State, and (2) abandoning use of any of the material to avoid disclosing privileged work product.

¶38    While we recognize that such a ruling could have a chilling effect on the presentation of potentially exculpatory evidence, it is impossible for us to gauge the impact of the court's ruling because Steffen never made a record of how he would have used the notes but for the order. An error is considered harmless unless the party seeking reversal can establish "that there is a reasonable likelihood that the error affected the outcome of the proceedings." *Brunson v. Bank of New York Mellon*, 2012 UT App 222, ¶ 3, 286 P.3d 934 (per curiam) (cleaned up). And we have consistently refused to presume prejudice where an appellant fails to provide a record that would allow us to perform a harmless error analysis. *See, e.g.*, *West Valley City v. Coyle*, 2016 UT App 149, ¶ 24 n.4, 380 P.3d 327;

*State v. Siavashi*, 2014 UT App 164, ¶ 2, 331 P.3d 1144 (per curiam); *Black v. Hennig*, 2012 UT App 259, ¶ 16, 286 P.3d 1256; *Huish v. Munro*, 2008 UT App 283, ¶ 9, 191 P.3d 1242. On this record, we have no way to assess the significance of the proposed impeachment evidence and whether its admission would have altered the overall evidentiary landscape.

¶39    Steffen asks us to presume prejudice here because, he contends, creating a sufficient record would have required him to disclose protected work product. We disagree. Steffen could have proffered only the factual portions of the notes that contained the prosecution witnesses' statements. Alternatively, without disclosing any portion of the notes, he could have made a record of the questions that he would have asked the prosecution witnesses but for the court's order. Either option might have allowed us to review the potential impact of the proposed impeachment evidence while still avoiding disclosure of Steffen's counsel's "mental impressions, conclusions, opinion, or legal theories." *See Southern Utah Wilderness All.*, 2008 UT 88, ¶ 24 (cleaned up). As it stands, however, the record does not demonstrate that the notes contained any favorable evidence, let alone evidence that would have affected the outcome of the case. Therefore, Steffen has not established reversible error.

### III. Mistrial

¶40    Finally, Steffen argues that the district court abused its discretion by denying his motion for mistrial after the State accidentally played the cutting statement for the jury. When a district court refuses to grant a mistrial based on an improper statement coming into evidence, the court does not abuse its discretion where the "improper statement is not intentionally elicited, is made in passing, and is relatively innocuous in light of all the testimony presented." *State v. Allen*, 2005 UT 11, ¶ 40, 108 P.3d 730. Based on these factors, we cannot conclude that the district court exceeded its discretion by denying Steffen's motion.

¶41 First, the cutting statement was not "intentionally elicited." *See id.* The State explained, outside the jury's presence, that it had inadvertently played the cutting statement due to a mistake with its editing software. The court accepted that representation when ruling on Steffen's motion, and Steffen does not challenge that factual finding on appeal.

¶42 Next, the cutting statement was "made in passing." *See id.* The cutting statement consisted of only two words—"I cut"—in the final seconds of a video played during the State's examination of A.Z. No testimony was elicited regarding the meaning or significance of the statement and no other evidence was introduced regarding self-harm by A.Z.

¶43 Finally, the accidental introduction of the cutting statement was "relatively innocuous." *See id.* Over the course of a six-day trial, the jury heard graphic testimony accusing Steffen of numerous instances of sexual crimes against a young child. The video containing the cutting statement was played only once early in the trial and was never referenced again. Given the nature of the evidence presented over the course of the six-day trial, we have no trouble concluding that the two-word cutting statement—played a single time without explanation—was "relatively innocuous."

¶44 In context, it is highly unlikely that the jury understood or attributed any significance to the cutting statement. But, on the off chance that any juror understood the reference and considered A.Z.'s self-harm as evidence that she had suffered sexual abuse, the district court allowed Steffen to introduce the prior abuse evidence to explain that the cutting may have been triggered by the abuse perpetrated by her grandfather. Although Steffen declined the opportunity to mitigate the cutting statement's prejudicial effect, the

court acted well within its discretion in offering an alternative remedy and denying Steffen's motion for mistrial.[10]

---

10. Steffen also appeals the district court's denial of his alternative motion to dismiss the charges against him. Given that Steffen cannot establish that the district court abused its discretion in denying the lesser sanction of a mistrial, he certainly cannot establish that the extreme sanction of dismissal was warranted based on the presentation of the cutting statement alone. *See United States v. Blue*, 384 U.S. 251, 255 (1966) (explaining that dismissal of charges is a "drastic" step that, if frequently used at the expense of other remedies, would "increase to an intolerable degree interference with the public interest in having the guilty brought to book"). We recognize that Steffen's motion to dismiss was based more broadly on what he characterized as "cumulative due process violations," including the State's repeated failure to disclose evidence to which the defense was entitled. But each of those instances was contemporaneously addressed and remedied by the court. Specifically, the court granted first a continuance and then a mistrial in response to the State's failure to disclose evidence and witness testimony to the defense. And in response to the cutting statement, the court ruled that Steffen could use the prior abuse evidence to rebut any negative inferences that statement caused. Dismissal of criminal charges is a drastic step, and a court does not abuse its discretion by denying a motion to dismiss when it has already granted sufficient remedies on a situation-by-situation basis. *See United States v. Koubriti*, 435 F. Supp. 2d 666, 681 (E.D. Mich. 2006) (holding that dismissal for prosecutorial misconduct requires a defendant to show "demonstrated and longstanding prosecutorial misconduct as well as a showing of substantial prejudice," and that showing cannot be made unless "the earlier misconduct was not remedied" (cleaned up)), *aff'd* 509 F.3d 746 (6th Cir. 2007); *see also United States v. Soto-Beniquez*, 356 F.3d 1, 30–31 (1st Cir. 2003) (affirming the denial of a motion

(continued…)

CONCLUSION

¶45     We hold that the district court acted within its discretion by excluding the prior abuse evidence. With respect to the motions to compel, Steffen has not demonstrated that he was entitled to further disclosure of the State's interview notes nor has he demonstrated that the district court's order compelling disclosure of the defense interview notes was harmful. Lastly, the district court did not abuse its discretion by denying Steffen's motion for mistrial. Accordingly, we affirm Steffen's convictions.

––––––––––

(…continued)

to dismiss based on the prosecution's repeated discovery violations where "the district court wisely addressed the prosecution's failures to comply with discovery deadlines on a situation-by-situation basis in order to prevent or remedy any prejudice that those violations may have had on the defendants").